# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **THOMAS GEORGE WICKER, JR.,** | § | |
| | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:17-cv-99** |
| | § | |
| **SETERUS, INC.,** | § | |
| | § | |
| **Defendant/Counter-Plaintiff.** | § | |
| | § | |
| **SETERUS, INC.,** | § | |
| | § | |
| **Third-Party Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ROCIO P. WICKER, MIDFIRST BANK, N.A. FEDERALLY CHARTERED SAVINGS ASSOCIATION, AND THE UNITED STATES OF AMERICA INTERNAL REVENUE SERVICE,** | § | |
| | § | |
| **Third-Party Defendants.** | § | |

**DECLARATION OF ______________**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following statements are true and correct:

1. My name is Olivia Davis. I am over the age of 18 years, have never been convicted of a crime, and am fully competent to make this declaration. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2. I hold a position as a LM ofc at Seterus, Inc. ("Seterus"). In the regular performance of my job functions at Seterus, I am familiar with the business records maintained by Seterus for the purpose of servicing mortgage loans, collecting payments and pursuing any delinquencies (the "Servicing Records"). The Servicing Records typically include electronic data compilations and imaged documents pertaining to the loans it services. Based on my training and general knowledge of the processes by which they are created and maintained, the Servicing Records were made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of the business activity regularly conducted by Seterus. It is the regular practice of Seterus to make and update its Servicing Records.

3. I am familiar with the attached records and am authorized to make this declaration. The facts stated within this declaration are based on personal knowledge obtained from my review of the records and documents of Seterus pertaining to the Loan of Thomas George Wicker, Jr. and Rocio P. Wicker (the "Wickers"), Plaintiff/Counter-Defendant and Third-Party Defendant in the current lawsuit, including the records attached as exhibits to this declaration.

4. On or about April 29, 2004, the Wickers executed a promissory note (the "Note") for $221,000.00 payable to Quicken Loans Inc. ("Quicken"). (Exh. A-1.) Concurrently with the Wickers' execution of the Note, they executed a deed of trust (the "Deed of Trust") securing the repayment of the Note with the real property commonly known as 6533 Calle Bonita Lane, El Paso Texas 79912 (the "Property"). (Exh. A-2.) (The Note and Deed of Trust shall collectively be referred to as the "Loan.") In the Deed of Trust, Mortgage Electronic Registration Systems, Inc. ("MERS") was identified as the beneficiary. (*Id.*)

5. MERS assigned the Deed of Trust to Bank of America, N.A. ("BANA") as reflected in the Assignment of Deed of Trust dated May 16, 2012 and recorded in the real property records of El Paso County, Texas on May 21, 2012 as document number 20120038964.

6. BANA assigned the Deed of Trust to Federal National Mortgage Association ("Fannie Mae") as reflected in that certain Assignment of Deed of Trust dated April 17, 2015 and recorded in the real property records of El Paso County, Texas as Document No. 20120028973. (Exh. A-4.) Fannie Mae is the current owner of the Note and beneficiary of the Deed of Trust. Seterus is currently the servicer for Fannie Mae with respect to the Loan.

7. The Wickers have not tendered all payments on the Note when due. (Exh. A-5, A-7.) Fannie Mae through its predecessor-in-interest, BANA, Inc., on or about October 16, 2013 sent to the Wickers, via United States certified and regular mail to the address 6533 Calle Bonita Lane, El Paso, TX 79912, Notice of Default with Intent to Accelerate ("Notice of Default"). (Exh. A-5.) In the Notice of Default, the Wickers were advised that the loan was in default and that they needed to tender $3,568.28 by November 25, 2013 to become current on the loan. *Id.* The Wcikers were also informed in the Notice of Default that her failure to timely bring the loan current would result in an acceleration of the debt. *Id.* No payments were made to Seterus to cure the default or reinstate the loan and the loan remains in default. (*Id.*; Exh. A-7.)

8. On August 12, 2016, Fannie Mae, through its attorneys, Mackie Wolf Zientz & Mann, P.C., sent via United States certified and regular mail to the Wickers at the address 6533 Calle Bonita Lane, El Paso TX 79912, Notice of Acceleration of Loan Maturity indicating that Loan had been accelerated. (Exh. A-6.) The same notice was mailed to address 5809 Acacia Circle, El Paso, TX 79912 Since that date, interest and other charges continued to accrue while the loan is in default. (*Id.*; Exh. A-7.)

9. Attached hereto are Exhibits A-1 through A-8 of records from Seterus. These records are kept by Seterus in the regular course of business, and it is the regular course of business of Seterus for an employee or representative of Seterus, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original. These records are also identified as exhibits to this declaration and are indicated below:

A-1. Note, dated April 29, 2004;

A-2. Deed of Trust, dated April 29, 2004;

A-3. Assignment of Deed of Trust, dated May 16, 2012;

A-4. Assignment of Deed of Trust, dated April 17, 2015;

A-5. Notice of Default dated October 16, 2013 and sent to Thomas George Wicker, Jr. and Rocio Wicker by certified and regular mail;

A-6. Notice of Acceleration of Loan Maturity dated August 12, 2016 and sent to Thomas George Wicker, Jr. and Rocio P. Wicker by certified and regular mail;

A-7. Payment History; and

A-8. Payoff.

Signed this 17 th day of January, 2018.

[signature]

Printed Name: Olivia Davis

# EXHIBIT A-1

MERS MIN: [redacted]

[redacted]

# NOTE

April 29, 2004 [Date] | El Paso [City] | TX [State]

6533 Calle Bonita Ln
El Paso, TX 79912
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 221,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Quicken Loans Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on July 1, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2019, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 530483, Livonia, MI 48153-0483 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,733.30

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

Thomas G. W. Wicker 04/29/2004 (Seal)
Thomas G. Wicker, Jr. -Borrower

Rocio P. Wicker 04/29/2004 (Seal)
Rocio P. Wicker -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

*[Sign Original Only]*

# EXHIBIT A-2

369027 NCF 110 (19)

Return To:
Valerie Gullekson
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI 48152

Certified that this is a true and correct copy of the original which has been transmitted for recordation.
First American Title Co.
By

Prepared By:
John Podia

[Space Above This Line For Recording Data] [redacted]

# DEED OF TRUST

MIN [redacted]

**NOTICE OF CONFIDENTIALITY RIGHTS:**
**If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: your social security number or your driver's license number.**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated April 29, 2004 together with all Riders to this document.
**(B) "Borrower"** is Thomas G. Wicker, Jr. and Rocio P. Wicker, husband and wife

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is Quicken Loans Inc.

Lender is a Corporation organized and existing under the laws of the State of Michigan

Lender's address is 20555 Victor Parkway, Livonia, MI 48152

Lender includes any holder of the Note who is entitled to receive payments under the Note.
**(D) "Trustee"** is FIRST AMERICAN LENDERS ADVANTAGE - NEC

. Trustee's address is
1591 GALBRAITH, GRAND RAPIDS, MI 49546

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is a beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated April 29, 2004
The Note states that Borrower owes Lender Two Hundred Twenty One Thousand and 00/100 Dollars
(U.S. $221,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2019 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| N/A Adjustable Rate Rider | N/A Condominium Rider | N/A Second Home Rider |
| N/A Balloon Rider | N/A Planned Unit Development Rider | N/A 1-4 Family Rider |
| N/A VA Rider | N/A Biweekly Payment Rider | N/A Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of El Paso :

[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF, SUBJECT TO COVENANTS OF RECORD.

Parcel ID Number: which currently has the address of

6533 Calle Bonita Ln. [Street]

El Paso [City], Texas 79912 [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: TW RPW

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: TW RAW

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: TW RPW

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[N/A] **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[N/A] **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[XX] **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[N/A] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

Initials: TW RPW

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

____________________ Thomas G. W. [signature] 04/29/2004 (Seal)
Thomas G. Wicker, Jr. -Borrower

____________________ Rocio P. Wicker [signature] 04/29/2004 (Seal)
Rocio P. Wicker -Borrower

____________________ (Seal) -Borrower ____________________ (Seal) -Borrower

____________________ (Seal) -Borrower ____________________ (Seal) -Borrower

____________________ (Seal) -Borrower ____________________ (Seal) -Borrower

**STATE OF TEXAS**
County of El Paso .

Before me , a notary public on this day personally appeared
Thomas G. Wicker, Jr. and Rocio P. Wicker, husband and wife

known to me (or proved to me on the oath of XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX or through XXXXXXXXXXXXXXXXXXXXXXXXXXXXX ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 29th day of April, 2004

(Seal)
NORMA C. FEDERICO
NOTARY PUBLIC
In and for the State of Texas
My commission expires
02-15-2006
NOTARY PUBLIC STATE OF TEXAS

Norma Federico
Notary Public

My Commission Expires:

Initials: TW RPW

## EXHIBIT 'A'

File No.: **TX04-369027-EL91 ()**

**Lot 20, Block 2, PARK HILLS UNIT ONE, an addition to the City of El Paso, El Paso County, Texas, according to map or plat thereof recorded in Volume 72 Pages 4 and 4A, of the Plat Records of El Paso County, Texas.**

**A.P.N. P32799900202000**



TW RPW

# RIDER TO THE DEED OF TRUST RENEWAL AND EXTENSION EXHIBIT

Loan # [redacted]

This RENEWAL AND EXTENSION EXHIBIT is incorporated into and shall be deemed to amend and supplement The Deed of Trust ("Security Instrument") of even date herewith. Security Instrument is granted by the Borrower(s) ("Borrower") to secure Borrower's indebtedness ("Note") to Lender (sometimes referred to as the "Beneficiary" or "Holder of the Note"), the Note secured hereby is in renewal and extension but not in extinguishment of that indebtedness, whether one or more, described as follows:

Vendor's Lien retained in Deed:

**Grantor:** Donald Ward Builder, Inc.

**Grantee:** Thomas G. Wicker and Rocio P. Valencia

**Dated:** March 5, 1999

**Recorded:** March 15, 1999 in Volume 3549 Page 1143, of the real property records of El Paso County, Texas.

Additionally secured by Deed of Trust:

**Grantor:** Thomas G. Wicker and Rocio P. Valencia

**Trustee:** G. Tommy Bastian

**Amount:** $216,000.00

**Beneficiary:** New America Financial, Inc.

**Recorded:** March 15, 1999 in Volume 3549 Page 1146, of the real property records of El Paso County, Texas.

Additionally secured by Deed of Trust:

**Grantor:** Thomas G. Wicker and Rocio P. Valencia

**Trustee:** Robertson and Anschutz

**Amount:** $19,000.00

**Beneficiary:** Chase Manhattan Bank USA, NA

**Recorded:** March 15, 1999 in Volume 3549 Page 1158, of the real property records of El Paso County, Texas.



TW
RPW

Said Note and Deed of Trust assigned to Bank of America, NA by Assignment:

**Dated:** September 14, 1999

**Recorded:** September 14, 1999 in Volume 3711 Page 485, of the real property records of El Paso County, Texas.

(Assignment of $216,000.00 Note)

THE LENDER HEREBY SECURED IS EXPRESSLY SUBROGATED TO ALL RIGHTS, LIENS, EQUITIES AND REMEDIES SECURING THE ORIGINAL HOLDER(S) OF SAID DEBT(S) AND THE ORIGINAL LIEN(S) SECURING THE SAME ARE HEREBY RENEWED AND EXTENDED TO DATE OF MATURITY OF THE INDEBTEDNESS HEREBY SECURED IN RENEWAL AND EXTENSION THEREOF. IN THE EVENT ANY PORTION OF THE SUMS INTENDED TO BE SECURED BY THE SECURITY INSTRUMENT CANNOT BE LAWFULLY SECURED THEREBY, PAYMENTS IN REDUCTION OF SUCH SUMS SHALL BE APPLIED FIRST TO THOSE PORTIONS NOT SECURED THEREBY. BORROWER(S) ACKNOWLEDGES THAT THE LIEN(S) SECURING THE PRIOR NOTE IS VALID, THAT IT SUBSISTS AGAINST THE PROPERTY, AND THAT BY THIS INSTRUMENT IT IS RENEWED AND EXTENDED IN FULL FORCE UNTIL THE NOTE IS PAID, EVEN THOUGH THE PRIOR LIEN(S) IS RELEASED AND NOT ASSIGNED TO LENDER.

Thomas G. W. Mr

**Borrower:** Thomas G. Wicker

Rocio P. Wicker

**Borrower:** Rocio P. Wicker
f/k/a Rocio P. Valencia

# EXHIBIT A-3

Doc# 20120038964

FILED FOR RECORD IN MY OFFICE
2012 MAY 21 A 1:49
COUNTY CLERK EL PASO COUNTY TEXAS

This space for Recorder's use

# ASSIGNMENT OF DEED OF TRUST

DocID# 3815814572715826

Property Address:
**6533 Calle Bonita Ln**
**El Paso, TX 79912-7500**
TXO-ADT 18282727 5/14/2012

Recording Requested By:
**Bank of America**
Prepared By:
**Bank of America**
**800-444-4302**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**

When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

MIN #: [redacted] MERS Phone #: 888-679-6377

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP** whose address is **13150 WORLD GATE DR, HERNDON, VA 20170** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **QUICKEN LOANS INC.** |
| Borrower(s): | **THOMAS G. WICKER, JR. AND ROCIO P. WICKER, HUSBAND AND WIFE** |
| Original Trustee: | **FIRST AMERICAN LENDERS ADVANTAGE - NEC** |
| Date of Deed of Trust: | **4/29/2004** |
| Original Loan Amount: | **$221,000.00** |

Recorded in **El Paso County, TX** on: **5/12/2004**, book **N/A**, page **N/A** and instrument number **20040044193**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on MAY 16 2012

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: ______________________

ELSI NAVARRO,
ASSISTANT SECRETARY

610 [redacted] D8 002 003

State of **California**
County of **Ventura**

On MAY 1 6 2012 before me, BARBARA JOYCE LILEY, Notary Public, personally appeared Elsi Navarro, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Barbara Joyce Liley

Notary Public: BARBARA JOYCE LILEY **(Seal)**

My Commission Expires: FEBRUARY 7, 2015

BARBARA JOYCE LILEY
Commission # 1924780
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2015

SCANNED

Doc# 20120038964
#Pages 2 #NFPages 1
5/29/2012 10:16:45 AM
Filed & Recorded in
Official Records of
El Paso County
Delia Briones
County Clerk
Fees $20.00

3
AU

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded by document number in the Official Public Records of Real Property in El Paso County.

Delia Briones

COUNTY CLERK OF EL PASO COUNTY TEXAS

EL PASO COUNTY, TEXAS

# EXHIBIT A-4

Doc# 20150028973

FILED ...

2015 MAY -1 PM 2:43

This space for Recorder's use

# ASSIGNMENT OF DEED OF TRUST

| | | |
|---|---|---|
| DocID# 4925814572716862<br><br>Property Address:<br>**6533 Calle Bonita Ln.**<br>**El Paso, TX 79912-7500**<br>TX0-ADT 32433192 4/16/2015 FNN331A | Recording Requested By:<br>**Bank of America**<br>Prepared By:<br>**Lisa Campbell Moore**<br>**813-615-3557**<br>**4909 Savarese Circle**<br>**Tampa, FL 33634** | When recorded mail to:<br>**CoreLogic**<br>**Mail Stop: ASGN**<br>**1 CoreLogic Drive**<br>**Westlake, TX 76262-9823** |

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **4909 SAVARESE CIRCLE, TAMPA, FL 33634** does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION** whose address is **14221 DALLAS PARKWAY SUITE 1000, DALLAS, TX 75254** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS** |
| Borrower(s): | **THOMAS G. WICKER JR. AND ROCIO P. WICKER, HUSBAND AND WIFE** |
| Original Trustee: | **FIRST AMERICAN LENDERS ADVANTAGE - NEC** |
| Date of Deed of Trust: | **4/29/2004** |
| Original Loan Amount: | **$221,000.00** |

Recorded in **El Paso County, TX** on: **5/12/2004**, book **4911**, page **1928** and instrument number **20040044193**

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc, 14523 SW Millikan Way #200, Beaverton, OR 97005, telephone # 1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on APR 17 2015

**BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP**

By: [signature]
**Andrea Zuta, Vice President**

State of **FL**, County of **Hillsborough**

The foregoing instrument was acknowledged before me this APR 17 2015, by **Andrea Zuta, Vice President** of **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP**, on behalf of the corporation. He/she is personally known to me or has produced ______ as identification.

[signature]
Notary Public: Martha Lucia Correa
My Commission Expires: 1/26/19

Martha Lucia Correa
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF192844
Expires 1/26/2019

Doc# 20150028973
#Pages 1 #NFPages 1
5/4/2015 9:44:28 AM
Filed & Recorded in
Official Records of
El Paso County
Delia Briones
County Clerk
Fees $26.00

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded by document number in the Official Public Records of Real Property in El Paso County.

EL PASO COUNTY, TEXAS

# EXHIBIT A-5

Bank of America
Home Loans
PO Box 9048
Temecula, CA 92589-9048

7196 9006 9296 9977 0099

Return Receipt Requested

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

*Send Payments to:*
PO Box 650070
Dallas, TX 75265-0070

*Send Correspondence to:*
PO Box 5170
Simi Valley, CA 93062-5170

20131018-213

THOMAS G WICKER Jr. & ROCIO P WICKER
6533 Calle Bonita Ln
El Paso, TX 79912-7500

BREACHTX(CM)

C3 5531 BREACHTX 15392 10/16/2012

**Bank of America**
**Home Loans**

Notice Date: October 16, 2013

Sent Certified Mail:
7196 9006 9296 9977 0099
Return Receipt Requested

THOMAS G WICKER Jr. & ROCIO P WICKER
6533 Calle Bonita Ln
El Paso, TX 79912-7500

Account No.: [redacted]
Property Address:
6533 CALLE BONITA LN.
EL PASO, TX 79912

Date of Note or Contract: May 18, 2004
Original Amount of Note or Contract: $221,000.00

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

**Este es un aviso importante respecto a su derecho de ocupar su casa. Favor de traducirlo de inmediato. (This is an important notice concerning your right to live in your home. Have it translated at once.)**

Dear THOMAS G WICKER Jr. & ROCIO P WICKER:

Bank of America, N.A. services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to cure this default, in other words, the amount required to bring the loan current, as of the date of this letter is as follows:

Monthly Charges:

| Month Due | Principal & Interest Amount | Escrow Amount | Optional Insurance Amount | Total Monthly Charge |
|---|---|---|---|---|
| 09/01/2013 | $1,733.30 | $0.01 | $0.00 | $1,733.31 |
| 10/01/2013 | $1,733.30 | $0.01 | $0.00 | $1,733.31 |

Late Charges:

| Month | Amount |
|---|---|
| 09/01/2013 | $86.66 |

| | |
|---|---|
| Total Monthly Charges: | $3,466.62 |
| Current Late Charges: | $86.66 |
| Prior Unpaid Late Charges: | $0.00 |
| Total Other Charges/Fees: | $15.00 |
| Partial Payment Balance: | ($0.00) |
| **TOTAL DUE** | **$3,568.28** |

You have the right to cure the default. To cure the default, on or before November 25, 2013, Bank of America, N.A. must receive the amount of $3,568.28 plus any additional regular monthly payment or payments, late charges, fees and charges, which become due on or before November 25, 2013. **Please contact the Home Loan Team at 1-800-669-1904 to verify the amount necessary to cure the default and bring your loan current.**

The default will not be considered cured unless Bank of America, N.A. receives "good funds" in the full amount as set forth in the previous paragraph on or before November 25, 2013. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. Bank of America, N.A. reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before November 25, 2013, the mortgage payments **will be accelerated** with the full

amount of the loan remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default will result in the foreclosure and sale of your property.

If required by law or your loan documents, you may have the right to cure the default and reinstate the loan after the acceleration of the mortgage payments and before the foreclosure sale of your property if all amounts due or past due are paid within the time permitted by law. However, Bank of America, N.A. and the Noteholder shall be entitled to collect all fees and costs incurred by Bank of America, N.A. and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action if you believe you are not in default. In such a court action, you may exercise any other defense or legal right to which you may be entitled to avoid acceleration of your loan and foreclosure.

According to your loan documents, Bank of America, N.A. may, enter upon and conduct an inspection of your property because your loan is in default. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied, and/or (iii) determine the identity of the occupant. If you do not cure the default before the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument and as permitted by law.**

If you are unable to cure the default on or before November 25, 2013, Bank of America, N.A. wants you to be aware of various options that may be available to you through Bank of America, N.A. to prevent a foreclosure sale of your property. For example:

- **Full Payoff:** You can payoff your loan in full by selling your property for any amount equal to or exceeding the total amount owed on your loan, or you may refinance your loan.
- **Repayment Plan:** You may be eligible for a repayment plan that allows you to make your regularly scheduled mortgage payments, plus pay off a portion of the past due amounts over time.
- **Loan Modification:** A loan modification is a change to the original terms of your loan. Loan modifications could include lowering your interest rate, extending the term or maturity date of the loan, moving from an adjustable to a fixed-rate loan, deferring some portion of the unpaid principal balance to the end of the loan, and/or forgiving some portion of the unpaid principal balance. This foreclosure alternative is limited to certain loan types.
- **Short Sale:** If you can no longer afford to make your mortgage payments and your home is worth less than you owe, a short sale may allow you to sell your home to pay off the mortgage. In a short sale, the lender agrees to accept an amount less than what is actually owed on the loan.
- **Deed in Lieu of Foreclosure:** Used as an alternative to foreclosure, with a deed in lieu of foreclosure, you transfer ownership of your house and all property secured by your mortgage loan. This may satisfy the total amount due on that mortgage.

If you are interested in discussing any of these foreclosure alternatives with Bank of America, N.A., you must contact us immediately. If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, please be advised that your decision to pursue any of these options is strictly voluntary. If you request assistance, Bank of America, N.A. will need to evaluate whether that assistance can be extended to you. In the meantime, Bank of America, N.A. will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by November 25, 2013 as outlined above will result in the acceleration of your debt.

Additionally, the U.S. Department of Housing and Urban Development (HUD) funds free or very low cost housing counseling across the nation. Housing counselors can help you understand the law and your options. They can also help you to organize your finances and represent you in negotiations with your lender if you need this assistance. You may find a HUD-approved housing counselor near you by calling 1-800-569-4287. For the hearing impaired, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

If your loan is currently being evaluated for a loan modification, forbearance or other loan assistance solution, this notice will not cancel or delay that evaluation process. However, it is important that you promptly respond to all requests made in connection with your evaluation for a loan assistance solution, including all requests for you to contact us and any documentation required. Please comply with these requests in a timely manner so your request for assistance can be considered as quickly as possible. If your loan is not eligible for a loan assistance program, please note this letter will continue to serve as notice of our right to initiate foreclosure.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the**

**National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Time is of the essence. Should you have any questions concerning this notice, please contact us immediately at 1-800-669-1904. Our office hours are Monday through Thursday 7am to 10pm CST, Friday 7am to 8pm CST, Saturday 8am to 2pm CST.

Bank of America, N.A.
Home Loan Team

## To contact us

| | |
|---|---|
| **Phone** | 1-800-669-1904<br>Office Hours Monday through Thursday 7am to 10pm CST, Friday 7am to 8pm CST, Saturday 8am to 2pm CST |
| **Mail** | PO Box 5170<br>Simi Valley, CA 93062-5170 |
| **To mail a payment** | PO Box 650070<br>Dallas, TX 75265-0070 |

## IMPORTANT DISCLOSURES

If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for information only and is not an attempt to collect the debt, a demand for payment, or an attempt to impose personal liability for that debt. You are not obligated to discuss your home loan with us or enter into a loan modification or other loan-assistance program. You should consult with your bankruptcy attorney or other advisor about your legal rights and options.

Bank of America, N.A., the servicer of your home loan, is required by law to inform you that this communication is from a debt collector.

There has been a payment default or other default on your loan that will result in acceleration of all sums due under the Note. As a result, Bank of America, N.A. will use companies, including its affiliates LandSafe Default, Inc., LandSafe Services, LLC., LandSafe Title of California, Inc., LandSafe Title of Washington, Inc., LandSafe Title of Florida, Inc., LandSafe Services of Alabama, Inc., LandSafe Title of Texas, Inc., ReconTrust Company, N.A., and LandSafe Appraisal Services, Inc., to provide services required to protect the Noteholder's interest and rights in the property and under the note and security instrument, including any remedies thereunder (the "Default Related Services"). Bank of America, N.A. will assess fees to your loan account for the Default Related Services, including those provided by its affiliates. A schedule of fees that may be charged to your account for Default Related Services is available at the following web address: http://www.bankofamerica.com/defaultfees. If you do not have internet access, please contact us at 1-800-669-6607, Monday through Thursday 8 a.m. - 11 p.m. Eastern, Friday 8 a.m. - 9 p.m. Eastern, Saturday 9 a.m. - 3 p.m. Eastern, to have a fee schedule mailed to you. The fee schedule contains a complete list of the default-related services you could be charged, but does not include a complete list of all fees or charges that could be assessed on your loan account.

**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1-877-430-5434. If you are calling from outside the U.S. please contact us at 1-817-685-6491.

C3 3222 BRECDISC 15353 09/24/12

# DIVULGACIONES IMPORTANTES

Si usted se encuentra actualmente en un procedimiento de quiebra, o ha obtenido previamente una exoneración de esta deuda bajo la ley aplicable sobre quiebra, este no es un intento de recaudación, una demanda de pago o un intento de imponer una responsabilidad personal por esa deuda. Usted no está obligado(a) a hablar de su préstamo para vivienda con nosotros ni a participar en un programa de modificación de préstamos u otro programa de asistencia para préstamos. Usted debe consultar con su abogado especializado en quiebras u otro asesor acerca de sus opciones y derechos legales.

Bank of America, N.A., el administrador de su préstamo para vivienda está obligado por ley a informarle a usted que esta comunicación proviene de un cobrador de deudas.

Ha ocurrido un incumplimiento de pago u otro tipo de incumplimiento con su préstamo que podrá resultar en la aceleración de todas las cantidades adeudadas bajo el Pagaré. Como resultado, Bank of America, N.A. utilizará compañías, incluyendo sus afiliados LandSafe Default, Inc., LandSafe Services, LLC., LandSafe Title of California, Inc., LandSafe Title of Washington, Inc., LandSafe Title of Florida, Inc., LandSafe Services of Alabama, Inc., LandSafe Title of Texas, Inc., ReconTrust Company, NA, y Landsafe Appraisal Services, Inc., para proporcionar servicios necesarios para proteger los intereses del Titular en la propiedad y sus derechos bajo el instrumento de seguridad y el pagaré, incluyendo cualquiera de sus recursos (los "Servicios relacionados a un incumplimiento"). Bank of America, N.A. aplicará cargos a la cuenta de su préstamo por los servicios relacionados a un incumplimiento, incluyendo los servicios proporcionados por sus afiliados. Una lista de los cargos que podrian cobrarse a su cuenta por servicios relacionados a un incumplimiento está disponible en el sitio de Internet: [http://www.bankofamerica.com/defaultfees]. Si usted no tiene acceso a internet, por favor comuníquese con nosotros al 1-800-669-6607 de lunes a jueves de 8 a. m. a 11 p. m. hora del este, viernes de 8 a. m. a 9 p. m. hora del este, sábados de 9 a. m. a 3 p. m. hora del este, para pedir que se le envie una lista de cargos por correo. La lista de cargos contiene una lista completa de los servicios relacionados por incumplimiento que le podian cobrar, pero no incluye una lista completa de todos los costos y cargos que podrian ser aplicados a la cuenta de su préstamo.

**PERSONAL MILITAR/ MIEMBROS DE LAS FUERZAS ARMADAS:** Si usted o su cónyuge es un miembro del servicio militar, por favor comuníquese con nosotros inmediatamente. La Ley federal de Ayuda Civil para Miembros de las Fuerzas Armadas y las leyes estatales comparables otorgan protecciones y beneficios significativos al personal del servicio militar que califique, incluídas protecciones contra la ejecución hipotecaria así como también ayuda en la tasa de interés. Para obtener más información y determinar su calificación por favor llame sin costo a nuestro Equipo de Asistencia para el Servicio Militar al 1-877-430-5434. Si usted llama desde fuera de los Estados Unidos por favor comuníquese con nosotros al 1-817-685-6491.

C3_5088 OPTAVDFC 15319 09/24/2012

Options are Available to Help You

# Avoid Foreclosure

## Call the number on the enclosed notice to learn more.

**When you call, please have your income and expense information available so we can discuss which option(s) could work for you.**

### Options to consider if your goal is to stay in your home

| Program | Description |
|---|---|
| **Home Affordable Modification Program (HAMP)** | A federal government program that allows you to repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing past due amounts at the end of the loan, and/or extending the term of the loan. You may be eligible for this program if you meet the following requirements:<br>• The amount you owe on the first mortgage is equal to or less than $729,750 for a single-family home, $934,200 for a 2 unit property, $1,129,250 for a 3 unit property or $1,403,400 for a 4 unit property<br>• You have documented a financial hardship and represented that you do not have sufficient liquid assets to make the monthly mortgage payments.<br>• Your mortgage was obtained before Jan. 1, 2009.<br>• The property securing the mortgage loan has not been condemned or is not in such poor physical condition that it is not habitable even if not condemned<br>• The mortgage is secured by a one to four unit property |
| **Loan Reinstatement** | If you can bring your loan payments up to date, we will accept the funds needed to bring the loan up to date until the day of your foreclosure sale. |
| **Repayment Plan** | A repayment plan allows you to make your regularly scheduled mortgage payments, plus pay off a portion of the past due amounts over time. This may include principal, interest, fees, and/or costs assessed to your loan. |
| **Temporary Forbearance Agreement** | An agreement whereby we agree not to proceed with foreclosure and/or collection of payments for a period of time, to allow you to re-establish your ability to make the required payments. |
| **Loan Modification (non-HAMP)** | A loan modification is a change to the original terms of your loan. Loan modifications could include lowering your interest rate, extending the term or maturity date of the loan, moving from an adjustable to a fixed-rate loan, deferring some portion of the unpaid principal balance to the end of the loan, and/or forgiving some portion of the unpaid principal balance. |
| **Partial Claim (FHA loans only)** | If you have a Federal Housing Administration (FHA) loan and your payments are past due but you are now able to make your regular monthly mortgage payment, this program is designed to bring your loan up to date by creating a second mortgage/lien on your property for the amount that is past due. |

### Options to consider if you cannot or do not wish to stay in your home

| Program | Description |
|---|---|
| **Home Affordable Foreclosure Alternatives Program (HAFA)** | Designed to help borrowers who are eligible for the Home Affordable Modification Program (HAMP) but were unsuccessful in securing a permanent modification through the program. HAFA provides the option of a short sale and, if unsuccessful, a deed in lieu of foreclosure. A short sale is a transaction in which you sell your property for less than the total amount owed on the loan (subject to agreement by your servicer/lender/investor), resulting in the release of our lien on your home and avoidance of foreclosure. A deed in lieu of foreclosure is a transaction in which you agree to voluntarily transfer ownership of your property to us in order to avoid foreclosure. |
| **Short Sale/ Pre-foreclosure Sale (non-HAFA)** | If you can no longer afford to make your mortgage payments and your home is worth less than you owe, a short sale may allow you to sell your home to pay off the mortgage. In a short sale, the lender agrees to accept an amount less than what is actually owed on the loan. Offered to borrowers who are not eligible for HAMP or other home retention alternatives. |
| **Deed in Lieu of Foreclosure (non-HAFA)** | Used as an alternative to foreclosure, with a deed in lieu of foreclosure, you transfer ownership of your house and all property secured by your mortgage loan. This may satisfy the total amount due on that mortgage. Offered to borrowers not eligible for HAMP or other home retention alternatives, and who were not able to sell the property through a short sale. |

## We are here to help you. Please call us today.

7196 9006 9296 9977 0099

C3 5086 OPTAVDFC 15319 09/24/2012

Hay opciones disponibles para ayudarle a

# Evitar la Ejecución Hipotecaria

## Llame al número que aparece en la notificación adjunta para obtener más información

**Cuando llame, por favor tenga a la mano la información de sus ingresos y gastos para que podamos discutir cuáles opciones podrían funcionar para usted.**

## Opciones a considerar si su objetivo es permanecer en su casa

| Programa | Descripción |
|---|---|
| **Home Affordable Modification Program (HAMP)** | Es un programa del gobierno federal que le permite pagar el préstamo bajo los nuevos términos acordados, que pueden incluir la reducción de la tasa de interés, agregar cantidades vencidas al final del préstamo, y/o extender el plazo del préstamo. Usted puede calificar para este programa si cumple con los siguientes requisitos:<br>• La cantidad que usted adeuda de su primera hipoteca es igual o menor que $729,750 dólares para una vivienda unifamiliar, $934,200 dólares para una propiedad de 2 unidades, $1,129,250 dólares para una propiedad de 3 unidades o $1,403,400 para una propiedad de 4 unidades<br>• Usted ha documentado que atraviesa por una dificultad financiera y declarado que no tiene suficiente liquidez para hacer los pagos mensuales de la hipoteca.<br>• Obtuvo su hipoteca antes del 1 de enero de 2009.<br>• La propiedad que garantiza el préstamo hipotecario no ha sido condenada o no está en malas condiciones físicas como para no poder habitarse incluso si no está condenada.<br>• La hipoteca está garantizada por una propiedad de una a cuatro unidades. |
| **Restablecimiento del Préstamo** | Si usted puede poner al día los pagos de su préstamo, aceptaremos los fondos necesarios para que el préstamo esté al día hasta la fecha de la venta por ejecución hipotecaria. |
| **Plan de Pago** | Un plan de pago le permite a usted hacer sus pagos hipotecarios regulares, además de pagar una porción de los montos vencidos a través del tiempo. Esto puede incluir capital, interés, cargos o costos aplicados a su préstamo. |
| **Acuerdo Temporal de Tolerancia por incumplimiento** | Es un acuerdo en el cual aceptamos no proceder con la ejecución hipotecaria y/o el cobro de los pagos por un periodo de tiempo, para permitirle que restablezca su habilidad de hacer los pagos requeridos. |
| **Modificación de Préstamo (no por medio de HAMP)** | Una modificación del préstamo es un cambio en los términos originales de su préstamo, Las modificaciones podrían incluir reducir su tasa de interés, extender el término o la fecha de pago del préstamo, cambiar de un préstamo de tasa de interés ajustable a uno de tasa de interés fija, diferir una parte del saldo del capital impagado al final del préstamo, y/o condonar una parte del saldo de capital impagado. |
| **Reclamo Parcial (solamente préstamos de la FHA)** | Si usted tiene un préstamo de la Administración Federal de Vivienda (FHA) y sus pagos están vencidos, pero ahora puede hacer sus pagos regulares mensuales de la hipoteca, este programa está diseñado para que su préstamo este al día mediante la creación de una segunda hipoteca / gravamen sobre su propiedad por el monto que está vencido. |

7196 9006 9296 9977 0099

## Opciones a considerar si no puede o no desea quedarse en su casa

| Programa | Descripción |
|---|---|
| **Home Affordable Foreclosure Alternatives Program (HAFA)** | Diseñado para ayudar a los prestatarios que califican para el Programa de Home Affordable Modification (HAMP), pero no consiguieron obtener una modificación permanente a través del programa. HAFA ofrece la posibilidad de una venta en descubierto y, si no tiene éxito, una escritura de traspaso voluntario de propiedad en lugar de la ejecución hipotecaria. Una venta en descubierto es una transacción en la que usted vende su propiedad por menos de la cantidad adeudada en el préstamo (sujeto a previo acuerdo de su administrador / prestamista / inversionista), resultando en la liberación de nuestro derecho de retención sobre su propiedad y evitar la ejecución hipotecaria. Una escritura de traspaso voluntario de propiedad en lugar de la ejecución hipotecaria es una transacción en la que usted está de acuerdo de transferir voluntariamente las escrituras de su propiedad a nosotros con el fin de evitar la ejecución hipotecaria. |
| **Venta en descubierto / Venta previa a la ejecución hipotecaria (no por medio de HAFA)** | Si usted ya no puede hacer sus pagos hipotecarios y su vivienda vale menos de lo que usted adeuda, una venta en descubierto le podria permitir vender su vivienda para pagar la hipoteca. En una venta en descubierto, el prestamista acepta recibir una monto menor de lo que actualmente se adeuda en el préstamo. Se ofrece a los prestatarios que no califican para HAMP o para otras alternativas de retención de la vivienda. |
| **Escritura de traspaso de propiedad en lugar de la ejecución hipotecaria (no por medio de HAFA)** | Se usa como una alternativa de la ejecución hipotecaria. Con una escritura de traspaso voluntario de propiedad en lugar de la ejecución hipotecaria, usted transfiere la titularidad de su vivienda y toda la propiedad que garantiza su préstamo hipotecario. Esto puede hacer que el monto total vencido de esa hipoteca se considere como pagado. Se ofrece a prestatarios que no califican para HAMP u otras opciones de retención de vivienda, y que no pudieron vender la propiedad a través de una venta en descubierto. |

## Estamos aquí para ayudarle. Por favor llámenos hoy.

# EXHIBIT A-6

MACKIE WOLF ZIENTZ & MANN, P.C.
ATTORNEYS AT LAW
PHONE (214) 635-2650 FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
* PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

13-002964-570
August 12, 2016
CERT MAIL
THOMAS G. WICKER, JR.
6533 CALLE BONITA LN.
EL PASO, TX 79912

RE: LOAN No. [redacted]
MWZM No. 13-002964-570

**NOTICE OF ACCELERATION OF LOAN MATURITY**

Dear THOMAS G. WICKER, JR.,

We have been retained by SETERUS, INC., Mortgage Servicer for FEDERAL NATIONAL MORTGAGE ASSOCIATION, the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

FEDERAL NATIONAL MORTGAGE ASSOCIATION
C/O SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt. We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note. Notification was sent that default had occurred in the payment of the Note and that SETERUS, INC. would accelerate the maturity of the Note if you did not cure the default. Because of your failure to cure the default, the maturity date of the Note was accelerated effective August 12, 2016.

All unpaid principal and accrued interest on the Note are due and payable at this time. You may obtain the precise amount to pay off the loan and prevent foreclosure by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

On Tuesday, 09/06/2016, the Trustee or Substitute Trustee will sell to the highest cash bidder, the property legally described in the enclosed Notice of Foreclosure Sale. The sale will occur at the El Paso County Courthouse in the area designated by the El Paso County Commissioner's Court, or if no such area has been designated by the Commissioner's Court then in the usual and customary location in that County. We have enclosed a copy of the Notice of Foreclosure Sale, which is being posted at the El Paso County Courthouse in accordance with Texas law and the provisions of the Deed of Trust.

All obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure. If this debt has been discharged in bankruptcy or you are not obligated on this debt, the Mortgage Servicer is not attempting to collect this debt from you personally.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.

Enclosed: Notice of Foreclosure Sale

# NOTICE OF FORECLOSURE SALE

1. ***Property to Be Sold.*** The property to be sold is described as follows:

LOT 20, BLOCK 2, PARK HILLS UNIT ONE, AN ADDITION TO THE CITY OF EL PASO, EL PASO COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 72 PAGES 4 AND 4A, OF THE PLAT RECORDS OF EL PASO COUNTY, TEXAS.

2. ***Instrument to be Foreclosed.*** The instrument to be foreclosed is the Deed of Trust dated 04/29/2004 and recorded in Book 4911 Page 1928 Document 20040044193 real property records of El Paso County, Texas.

3. ***Date, Time, and Place of Sale.*** The sale is scheduled to be held at the following date, time, and place:

Date: 09/06/2016

Time: 10:00 AM

Place: El Paso County Courthouse, Texas, at the following location:

LOBBY OF FIRST FLOOR AT THE NEW EL PASO COUNTY COURTHOUSE OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE or as designated by the County Commissioners Court.

4. ***Terms of Sale.*** The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property.

Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the deed of trust. The sale shall not cover any part of the property that has been released of public record from the lien of the deed of trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

5. ***Obligations Secured.*** The Deed of Trust executed by THOMAS G. WICKER, JR. AND ROCIO P. WICKER, provides that it secures the payment of the indebtedness in the original principal amount of $221,000.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. FEDERAL NATIONAL MORTGAGE ASSOCIATION is the current mortgagee of the note and deed of trust and SETERUS, INC. is mortgage servicer. A servicing agreement between the mortgagee, whose address is FEDERAL NATIONAL MORTGAGE ASSOCIATION c/o SETERUS, INC., 14523 SW Millikan Way Suite 200, Beaverton, OR 97005 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

6. ***Default and Request to Act.*** Default has occurred under the deed of trust, and the mortgagee has requested a Substitute Trustee conduct this sale. Notice is given that before the sale the mortgagee may appoint another person substitute trustee to conduct the sale.

______________________________________

KENNY SHIREY, BOB DICKERSON, TROY ROBINETT, BRUCE MILLER, BRETT SALAS, DAREN SHUMWAY, ISRAEL CURTIS, JASON SPENCE, KELLY MCDANIEL, TIM WORSTELL, COLETTE MAYERS, STEPHEN MAYERS, JOHN PERSON, FAITH FLORES, JESUS PORTILLO, FREDERICK BRITTON, EVAN PRESS, BEVERLY MITRISIN OR CHARLES THOMAS NATIONS
c/o AVT Title Services, LLC
13770 Noel Road #801529
Dallas, TX 75380-1529

13-002964-570
6533 CALLE BONITA LN., EL PASO, TX 79912

**MACKIE WOLF ZIENTZ & MANN, P.C.**
ATTORNEYS AT LAW
PHONE (214) 635-2650 FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
* PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

13-002964-570
August 12, 2016
CERT MAIL
THOMAS G. WICKER, JR.
C/O THE LAW OFFICE OF TOM WICKER, JR., P.C.
5809 ACACIA CIRCLE
EL PASO, TX 79912

RE: LOAN NO. [redacted]
MWZM No. 13-002964-570

**NOTICE OF ACCELERATION OF LOAN MATURITY**

Dear THOMAS G. WICKER, JR.,

We have been retained by SETERUS, INC., Mortgage Servicer for FEDERAL NATIONAL MORTGAGE ASSOCIATION, the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

FEDERAL NATIONAL MORTGAGE ASSOCIATION
C/O SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt. We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note. Notification was sent that default had occurred in the payment of the Note and that SETERUS, INC. would accelerate the maturity of the Note if you did not cure the default. Because of your failure to cure the default, the maturity date of the Note was accelerated effective August 12, 2016.

All unpaid principal and accrued interest on the Note are due and payable at this time. You may obtain the precise amount to pay off the loan and prevent foreclosure by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

On Tuesday, 09/06/2016, the Trustee or Substitute Trustee will sell to the highest cash bidder, the property legally described in the enclosed Notice of Foreclosure Sale. The sale will occur at the El Paso County Courthouse in the area designated by the El Paso County Commissioner's Court, or if no such area has been designated by the Commissioner's Court then in the usual and customary location in that County. We have enclosed a copy of the Notice of Foreclosure Sale, which is being posted at the El Paso County Courthouse in accordance with Texas law and the provisions of the Deed of Trust.

All obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure. If this debt has been discharged in bankruptcy or you are not obligated on this debt, the Mortgage Servicer is not attempting to collect this debt from you personally.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.

Enclosed: Notice of Foreclosure Sale

# NOTICE OF FORECLOSURE SALE

1. ***Property to Be Sold.*** The property to be sold is described as follows:

LOT 20, BLOCK 2, PARK HILLS UNIT ONE, AN ADDITION TO THE CITY OF EL PASO, EL PASO COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 72 PAGES 4 AND 4A, OF THE PLAT RECORDS OF EL PASO COUNTY, TEXAS.

2. ***Instrument to be Foreclosed.*** The instrument to be foreclosed is the Deed of Trust dated 04/29/2004 and recorded in Book 4911 Page 1928 Document 20040044193 real property records of El Paso County, Texas.

3. ***Date, Time, and Place of Sale.*** The sale is scheduled to be held at the following date, time, and place:

Date: 09/06/2016

Time: 10:00 AM

Place: El Paso County Courthouse, Texas, at the following location:

LOBBY OF FIRST FLOOR AT THE NEW EL PASO COUNTY COURTHOUSE OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE or as designated by the County Commissioners Court.

4. ***Terms of Sale.*** The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property.

Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the deed of trust. The sale shall not cover any part of the property that has been released of public record from the lien of the deed of trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

5. ***Obligations Secured.*** The Deed of Trust executed by THOMAS G. WICKER, JR. AND ROCIO P. WICKER, provides that it secures the payment of the indebtedness in the original principal amount of $221,000.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. FEDERAL NATIONAL MORTGAGE ASSOCIATION is the current mortgagee of the note and deed of trust and SETERUS, INC. is mortgage servicer. A servicing agreement between the mortgagee, whose address is FEDERAL NATIONAL MORTGAGE ASSOCIATION c/o SETERUS, INC., 14523 SW Millikan Way Suite 200, Beaverton, OR 97005 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

6. ***Default and Request to Act.*** Default has occurred under the deed of trust, and the mortgagee has requested a Substitute Trustee conduct this sale. Notice is given that before the sale the mortgagee may appoint another person substitute trustee to conduct the sale.

KENNY SHIREY, BOB DICKERSON, TROY ROBINETT, BRUCE MILLER, BRETT SALAS, DAREN SHUMWAY, ISRAEL CURTIS, JASON SPENCE, KELLY MCDANIEL, TIM WORSTELL, COLETTE MAYERS, STEPHEN MAYERS, JOHN PERSON, FAITH FLORES, JESUS PORTILLO, FREDERICK BRITTON, EVAN PRESS, BEVERLY MITRISIN OR CHARLES THOMAS NATIONS
c/o AVT Title Services, LLC
13770 Noel Road #801529
Dallas, TX 75380-1529

13-002964-570
6533 CALLE BONITA LN., EL PASO, TX 7991?

**MACKIE WOLF ZIENTZ & MANN, P.C.**
ATTORNEYS AT LAW
PHONE (214) 635-2650 FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
** PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

13-002964-570
August 12, 2016
CERT MAIL
ROCIO P. WICKER
6533 CALLE BONITA LN.
EL PASO, TX 79912

RE: LOAN No. [redacted]
MWZM No. 13-002964-570

**NOTICE OF ACCELERATION OF LOAN MATURITY**

Dear ROCIO P. WICKER,

We have been retained by SETERUS, INC., Mortgage Servicer for FEDERAL NATIONAL MORTGAGE ASSOCIATION, the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

FEDERAL NATIONAL MORTGAGE ASSOCIATION
C/O SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt. We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note. Notification was sent that default had occurred in the payment of the Note and that SETERUS, INC. would accelerate the maturity of the Note if you did not cure the default. Because of your failure to cure the default, the maturity date of the Note was accelerated effective August 12, 2016.

All unpaid principal and accrued interest on the Note are due and payable at this time. You may obtain the precise amount to pay off the loan and prevent foreclosure by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

On Tuesday, 09/06/2016, the Trustee or Substitute Trustee will sell to the highest cash bidder, the property legally described in the enclosed Notice of Foreclosure Sale. The sale will occur at the El Paso County Courthouse in the area designated by the El Paso County Commissioner's Court, or if no such area has been designated by the Commissioner's Court then in the usual and customary location in that County. We have enclosed a copy of the Notice of Foreclosure Sale, which is being posted at the El Paso County Courthouse in accordance with Texas law and the provisions of the Deed of Trust.

All obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure. If this debt has been discharged in bankruptcy or you are not obligated on this debt, the Mortgage Servicer is not attempting to collect this debt from you personally.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.

Enclosed: Notice of Foreclosure Sale

# NOTICE OF FORECLOSURE SALE

1. ***Property to Be Sold.*** The property to be sold is described as follows:

LOT 20, BLOCK 2, PARK HILLS UNIT ONE, AN ADDITION TO THE CITY OF EL PASO, EL PASO COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 72 PAGES 4 AND 4A, OF THE PLAT RECORDS OF EL PASO COUNTY, TEXAS.

2. ***Instrument to be Foreclosed.*** The instrument to be foreclosed is the Deed of Trust dated 04/29/2004 and recorded in Book 4911 Page 1928 Document 20040044193 real property records of El Paso County, Texas.

3. ***Date, Time, and Place of Sale.*** The sale is scheduled to be held at the following date, time, and place:

Date: 09/06/2016

Time: 10:00 AM

Place: El Paso County Courthouse, Texas, at the following location:

LOBBY OF FIRST FLOOR AT THE NEW EL PASO COUNTY COURTHOUSE OR AS DESIGNATED BY THE COUNTY COMMISSIONER`S OFFICE or as designated by the County Commissioners Court.

4. ***Terms of Sale.*** The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property.

Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the deed of trust. The sale shall not cover any part of the property that has been released of public record from the lien of the deed of trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

5. ***Obligations Secured.*** The Deed of Trust executed by THOMAS G. WICKER, JR. AND ROCIO P. WICKER, provides that it secures the payment of the indebtedness in the original principal amount of $221,000.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. FEDERAL NATIONAL MORTGAGE ASSOCIATION is the current mortgagee of the note and deed of trust and SETERUS, INC. is mortgage servicer. A servicing agreement between the mortgagee, whose address is FEDERAL NATIONAL MORTGAGE ASSOCIATION c/o SETERUS, INC., 14523 SW Millikan Way Suite 200, Beaverton, OR 97005 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

6. ***Default and Request to Act.*** Default has occurred under the deed of trust, and the mortgagee has requested a Substitute Trustee conduct this sale. Notice is given that before the sale the mortgagee may appoint another person substitute trustee to conduct the sale.

______________________________

KENNY SHIREY, BOB DICKERSON, TROY ROBINETT, BRUCE MILLER, BRETT SALAS, DAREN SHUMWAY, ISRAEL CURTIS, JASON SPENCE, KELLY MCDANIEL, TIM WORSTELL, COLETTE MAYERS, STEPHEN MAYERS, JOHN PERSON, FAITH FLORES, JESUS PORTILLO, FREDERICK BRITTON, EVAN PRESS, BEVERLY MITRISIN OR CHARLES THOMAS NATIONS
c/o AVT Title Services, LLC
13770 Noel Road #801529
Dallas, TX 75380-1529

13-002964-570
6533 CALLE BONITA LN., EL PASO, TX 79912

**MACKIE WOLF ZIENTZ & MANN, P.C.**

ATTORNEYS AT LAW
PHONE (214) 635-2650 FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
* PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

13-002964-570
August 12, 2016
CERT MAIL
ROCIO P. WICKER
C/O THE LAW OFFICE OF TOM WICKER, JR., P.C.
5809 ACACIA CIRCLE
EL PASO, TX 79912

RE: LOAN No [redacted]
MWZM No. 13-002964-570

**NOTICE OF ACCELERATION OF LOAN MATURITY**

Dear ROCIO P. WICKER,

We have been retained by SETERUS, INC., Mortgage Servicer for FEDERAL NATIONAL MORTGAGE ASSOCIATION, the current Mortgagee of the Note and Deed of Trust related to the above referenced loan. A servicing agreement between the Mortgagee, whose address is:

FEDERAL NATIONAL MORTGAGE ASSOCIATION
C/O SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt. We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note. Notification was sent that default had occurred in the payment of the Note and that SETERUS, INC. would accelerate the maturity of the Note if you did not cure the default. Because of your failure to cure the default, the maturity date of the Note was accelerated effective August 12, 2016.

All unpaid principal and accrued interest on the Note are due and payable at this time. You may obtain the precise amount to pay off the loan and prevent foreclosure by contacting this firm at **(214) 635-2650**. Payment must be made by cashier's check, certified check or money orders.

On Tuesday, 09/06/2016, the Trustee or Substitute Trustee will sell to the highest cash bidder, the property legally described in the enclosed Notice of Foreclosure Sale. The sale will occur at the El Paso County Courthouse in the area designated by the El Paso County Commissioner's Court, or if no such area has been designated by the Commissioner's Court then in the usual and customary location in that County. We have enclosed a copy of the Notice of Foreclosure Sale, which is being posted at the El Paso County Courthouse in accordance with Texas law and the provisions of the Deed of Trust.

All obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure. If this debt has been discharged in bankruptcy or you are not obligated on this debt, the Mortgage Servicer is not attempting to collect this debt from you personally.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.

Enclosed: Notice of Foreclosure Sale

# NOTICE OF FORECLOSURE SALE

1. ***Property to Be Sold.*** The property to be sold is described as follows:

LOT 20, BLOCK 2, PARK HILLS UNIT ONE, AN ADDITION TO THE CITY OF EL PASO, EL PASO COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN VOLUME 72 PAGES 4 AND 4A, OF THE PLAT RECORDS OF EL PASO COUNTY, TEXAS.

2. ***Instrument to be Foreclosed.*** The instrument to be foreclosed is the Deed of Trust dated 04/29/2004 and recorded in Book 4911 Page 1928 Document 20040044193 real property records of El Paso County, Texas.

3. ***Date, Time, and Place of Sale.*** The sale is scheduled to be held at the following date, time, and place:

Date: 09/06/2016

Time: 10:00 AM

Place: El Paso County Courthouse, Texas, at the following location:

LOBBY OF FIRST FLOOR AT THE NEW EL PASO COUNTY COURTHOUSE OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE or as designated by the County Commissioners Court.

4. ***Terms of Sale.*** The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property.

Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property.

Prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the deed of trust. The sale shall not cover any part of the property that has been released of public record from the lien of the deed of trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

5. ***Obligations Secured.*** The Deed of Trust executed by THOMAS G. WICKER, JR. AND ROCIO P. WICKER, provides that it secures the payment of the indebtedness in the original principal amount of $221,000.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. FEDERAL NATIONAL MORTGAGE ASSOCIATION is the current mortgagee of the note and deed of trust and SETERUS, INC. is mortgage servicer. A servicing agreement between the mortgagee, whose address is FEDERAL NATIONAL MORTGAGE ASSOCIATION c/o SETERUS, INC., 14523 SW Millikan Way Suite 200, Beaverton, OR 97005 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

6. ***Default and Request to Act.*** Default has occurred under the deed of trust, and the mortgagee has requested a Substitute Trustee conduct this sale. Notice is given that before the sale the mortgagee may appoint another person substitute trustee to conduct the sale.

KENNY SHIREY, BOB DICKERSON, TROY ROBINETT, BRUCE MILLER, BRETT SALAS, DAREN SHUMWAY, ISRAEL CURTIS, JASON SPENCE, KELLY MCDANIEL, TIM WORSTELL, COLETTE MAYERS, STEPHEN MAYERS, JOHN PERSON, FAITH FLORES, JESUS PORTILLO, FREDERICK BRITTON, EVAN PRESS, BEVERLY MITRISIN OR CHARLES THOMAS NATIONS
c/o AVT Title Services, LLC
13770 Noel Road #801529
Dallas, TX 75380-1529

13-002904-570
6533 CALLE BONITA LN., EL PASO, TX 79912

# EXHIBIT A-7

SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

P6591-45C
REQ BY 73S

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 12/21/17
PAGE 01

THOMAS G WICKER
ROCIO P WICKER
6533 CALLE BONITA LN
EL PASO TX 79912

********************************************************************************

CURRENT ACCOUNT INFORMATION

| LOAN NUMBER | DATE PAYMENT DUE | TOTAL PAYMENT AMOUNT | PRINCIPAL & INTEREST PAYMENT | LOAN INTEREST RATE | CURRENT PRINCIPAL BALANCE | ESCROW BALANCE |
|---|---|---|---|---|---|---|
| [redacted] | 09-01-13 | 1733.31 | 1733.30 | 4.87500 | 105,419.05 | 54,248.53- |

********************************************************************************

ACTIVITY FOR PERIOD 01-01-15 - 12-20-17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|---|
| **TRANSACTION AMOUNT** | **PRIN PD/ BALANCE** | **INTEREST** | **ESCROW PD/ BALANCE** | **OTHER AMOUNT** | **OTHER CODE/DESCRIPTION** | |
| 11-29-17 | 09-13 | 161 | ESCROW ADVANCE | | | |
| 8,900.79 | 0.00 | 0.00 | 8,900.79 | | | |
| 11-29-17 | 12-17 | 312 | COUNTY TAX | | | |
| 8,900.79- | 0.00 | 0.00 | 8,900.79- | | | |
| | | | 54,248.53- | | NEW PRINCIPAL/ESCROW BALANCES | |
| 11-21-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 10-24-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 09-28-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 08-24-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 07-26-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 07-17-17 | 09-13 | 168 | REPAY OF ESCROW ADVANCE | | | |
| 0.00 | 0.00 | 0.00 | 755.18- | 755.18 | | |
| 07-17-17 | 09-13 | 163 | HAZARD INSURANCE REFUND | | | |
| 755.18 | 0.00 | 0.00 | 755.18 | | | |
| | | | 45,347.74- | | NEW PRINCIPAL/ESCROW BALANCES | |
| 06-28-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 05-24-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-27-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | | |
| 15.00 | 0.00 | 0.00 | 0.00 | | | |

SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

P6591-45C — CUSTOMER ACCOUNT ACTIVITY STATEMENT — DATE 12/21/17
REQ BY 73S — 

THOMAS G WICKER
LOAN NUMBER: [redacted]

ACTIVITY FOR PERIOD 01-01-15 - 12-20-17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | PRIN PD/ BALANCE | INTEREST | ESCROW PD/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|
| 04-27-17 | 00-00 | 630 | ATTORNEY FEES | 225.00 | 0.00 | 0.00 | 0.00 | | |
| 04-27-17 | 00-00 | 630 | ATTORNEY FEES | 13.00 | 0.00 | 0.00 | 0.00 | | |
| 04-27-17 | 00-00 | 630 | ATTORNEY FEES | 0.67 | 0.00 | 0.00 | 0.00 | | |
| 04-17-17 | 09-13 | 161 | ESCROW ADVANCE | 1,253.00 | 0.00 | 0.00 | 1,253.00 | | |
| 04-17-17 | 02-17 | 351 | HOMEOWNERS INSURANCE PREMIUM | 1,253.00- | 0.00 | 0.00 | 1,253.00- | | |
| | | | | | | | 46,102.92- | | NEW PRINCIPAL/ESCROW BALANCES |
| 03-29-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 03-02-17 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 12-30-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 12-02-16 | 09-13 | 161 | ESCROW ADVANCE | 8,472.83 | 0.00 | 0.00 | 8,472.83 | | |
| 12-02-16 | 12-16 | 312 | COUNTY TAX | 8,472.83- | 0.00 | 0.00 | 8,472.83- | | |
| | | | | | | | 44,849.92- | | NEW PRINCIPAL/ESCROW BALANCES |
| 11-22-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 10-28-16 | 00-00 | 766 | MISC. CORPORATE ADVANCE REPAYMENT | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 10-06-16 | 00-00 | 630 | ATTORNEY FEES | 15.06 | 0.00 | 0.00 | 0.00 | | |
| 10-06-16 | 00-00 | 630 | ATTORNEY FEES | 26.00 | 0.00 | 0.00 | 0.00 | | |
| 10-06-16 | 00-00 | 630 | ATTORNEY FEES | 350.00 | 0.00 | 0.00 | 0.00 | | |
| 09-01-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 07-27-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 06-29-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 06-02-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | 15.00 | 0.00 | 0.00 | 0.00 | | |

SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

P6591-45C
REQ BY 73S

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 12/21/17
PAGE 03

THOMAS G WICKER
LOAN NUMBER: [redacted]

ACTIVITY FOR PERIOD 01-01-15 - 12-20-17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION | TRANSACTION AMOUNT | PRIN PD/ BALANCE | INTEREST | ESCROW PD/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 05-31-16 | 00-00 | 766 | MISC. CORPORATE ADVANCE REPAYMENT | | 166.68 | 0.00 | 0.00 | 0.00 | | |
| 05-20-16 | 00-00 | 601 | MISCELLANEOUS CORPORATE ADVANCES | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-27-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 03-31-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 03-23-16 | 09-13 | 161 | ESCROW ADVANCE | | 8,333.69 | 0.00 | 0.00 | 8,333.69 | | |
| 03-23-16 | 12-15 | 326 | | | 8,333.69- | 0.00 | 0.00 | 8,333.69- | | |
| | | | | | | | | 36,377.09- | | NEW PRINCIPAL/ESCROW BALANCES |
| 03-23-16 | 00-00 | 601 | MISCELLANEOUS CORPORATE ADVANCES | | 916.71 | 0.00 | 0.00 | 0.00 | | |
| 03-02-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 02-05-16 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 12-23-15 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 12-03-15 | 00-00 | 633 | MISC. LEGAL FEES/COSTS | | 5.00 | 0.00 | 0.00 | 0.00 | | |
| 11-27-15 | 00-00 | 630 | ATTORNEY FEES | | 225.00 | 0.00 | 0.00 | 0.00 | | |
| 11-27-15 | 00-00 | 630 | ATTORNEY FEES | | 37.82 | 0.00 | 0.00 | 0.00 | | |
| 11-27-15 | 00-00 | 630 | ATTORNEY FEES | | 39.00 | 0.00 | 0.00 | 0.00 | | |
| 11-27-15 | 00-00 | 630 | ATTORNEY FEES | | 927.50 | 0.00 | 0.00 | 0.00 | | |
| 11-24-15 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 10-21-15 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 09-23-15 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 08-27-15 | 00-00 | 631 | PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |

SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

P6591-45C CUSTOMER ACCOUNT ACTIVITY STATEMENT DATE 12/21/17
REQ BY 73S PAGE 04

THOMAS G WICKER
LOAN NUMBER: [redacted]

ACTIVITY FOR PERIOD 01-01-15 - 12-20-17

PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION

TRANSACTION AMOUNT | PRIN PD/ BALANCE | INTEREST | ESCROW PD/ BALANCE | ------OTHER------ AMOUNT CODE/DESCRIPTION

07-22-15 00-00 631 PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT
15.00 0.00 0.00 0.00
06-24-15 00-00 631 PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT
15.00 0.00 0.00 0.00
05-27-15 00-00 631 PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT
15.00 0.00 0.00 0.00
04-23-15 00-00 631 PROPERTY PRESERVATION CORPORATE ADV DISBURSEMENT
15.00 0.00 0.00 0.00
04-15-15 09-13 132 LATE CHARGE ADJUSTMENT
0.00 0.00 0.00 0.00 259.98-1 LATE CHARGE
04-10-15 09-13 161 ESCROW ADVANCE
28,043.40 0.00 0.00 28,043.40
04-10-15 09-13 170 DISTRIBUTED PAYMENTS
8,043.42- 0.00 0.00 8,043.42-
28,043.40- NEW PRINCIPAL/ESCROW BALANCES
04-10-15 09-13 170 DISTRIBUTED PAYMENTS
9,999.99- 0.00 0.00 9,999.99-
19,999.98- NEW PRINCIPAL/ESCROW BALANCES
04-10-15 09-13 170 DISTRIBUTED PAYMENTS
9,999.99- 0.00 0.00 9,999.99-
9,999.99- NEW PRINCIPAL/ESCROW BALANCES
04-09-15 00-00 745 RESTRICTED CORPORATE ADVANCE REPAYMENT
75.00 0.00 0.00 0.00
04-09-15 00-00 745 RESTRICTED CORPORATE ADVANCE REPAYMENT
225.00 0.00 0.00 0.00
04-09-15 00-00 745 RESTRICTED CORPORATE ADVANCE REPAYMENT
16.00 0.00 0.00 0.00
04-09-15 00-00 745 RESTRICTED CORPORATE ADVANCE REPAYMENT
28.59 0.00 0.00 0.00
04-09-15 00-00 745 RESTRICTED CORPORATE ADVANCE REPAYMENT
19.20 0.00 0.00 0.00
04-09-15 00-00 745 RESTRICTED CORPORATE ADVANCE REPAYMENT
366.00 0.00 0.00 0.00
04-09-15 00-00 745 RESTRICTED CORPORATE ADVANCE REPAYMENT
1,327.50 0.00 0.00 0.00
04-09-15 00-00 745 RESTRICTED CORPORATE ADVANCE REPAYMENT
87.50 0.00 0.00 0.00
04-09-15 00-00 745 RESTRICTED CORPORATE ADVANCE REPAYMENT
35.00 0.00 0.00 0.00

SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

P6591-45C CUSTOMER ACCOUNT ACTIVITY STATEMENT DATE 12/21/17
REQ BY 73S 

THOMAS G WICKER
LOAN NUMBER: [redacted]

ACTIVITY FOR PERIOD 01-01-15 - 12-20-17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION | TRANSACTION AMOUNT | PRIN PD/ BALANCE | INTEREST | ESCROW PD/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 1,378.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 2,767.50 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 1,099.50 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 959.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 629.50 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 157.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 1,144.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | | 15.00 | 0.00 | 0.00 | 0.00 | | |

SETERUS, INC.
14523 SW MILLIKAN WAY SUITE 200
BEAVERTON, OR 97005

P6591-45C CUSTOMER ACCOUNT ACTIVITY STATEMENT DATE 12/21/17
REQ BY 73S PAGE 06

THOMAS G WICKER
LOAN NUMBER: [redacted]

ACTIVITY FOR PERIOD 01-01-15 - 12-20-17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | PRIN PD/ BALANCE | INTEREST | ESCROW PD/ BALANCE | OTHER AMOUNT | OTHER CODE/DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 15.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 400.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 8.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 400.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 8.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 179.38 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 927.50 | 0.00 | 0.00 | 0.00 | | | |
| 04-09-15 | 00-00 | 745 | RESTRICTED CORPORATE ADVANCE REPAYMENT | 720.00 | 0.00 | 0.00 | 0.00 | | | |
| 04-08-15 | 09-13 | 142 | NEW LOAN SETUP | 0.00 | 105,419.05-<br>105,419.05 | 0.00 | 0.00 | | NEW PRINCIPAL/ESCROW BALANCES | |

# EXHIBIT A-8

seterus™

Seterus, Inc

PO Box 1077; Hartford, CT 06143-1077

# FACSIMILE

**To:** Susan Taplin

**Fax:** 2146352686
**Phone:**

**From:** Seterus, Inc.

**Fax:** 866.578.5277
**Phone:** 866.570.5277

**Date:** 12/22/2017

**Pages:** 4 **(including cover)**

**Re:** Payoff Letter
**Loan:** [redacted]

telephone
866.570.5277

facsimile
866.578.5277

www.seterus.com

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. **COLORADO:** SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

This facsimile transmission is intended only for the use of the individual or entity to which it is addressed, and may contain certain cofidential information belonging to the sender. Any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone to arrange for the return of the documents.

seterus™
PO Box 1077; Hartford, CT 06143-1077

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Physical Address**
14523 SW Millikan Way; Suite 200; Beaverton, OR 97005

**Payments**
PO Box 54420; Los Angeles, CA 90054-0420

**Correspondence, Inquiries, and Notices**
PO Box 1077; Hartford, CT 06143-1077

**Phone:**866.570.5277
**Fax:**866.578.5277
www.seterus.com

*L103AB.1*

WICKER, THOMAS G
WICKER, ROCIO P
6533 CALLE BONITA LN
EL PASO, TX 79912

December 22, 2017
Loan Number: [redacted]
Serviced by Seterus, Inc.

RE: 6533 CALLE BONITA LN
EL PASO, TX 79912

Dear WICKER, THOMAS G and WICKER, ROCIO P:

We are responding to your request for the payoff total on loan number 28962592. All of the conditions in this statement must be met for your loan to be paid in full. Subject to these conditions, the amount required to pay your loan in full by December 29, 2017 is $198,153.54. This includes an unpaid principal balance of $105,419.05.

**PAYOFF CONDITIONS**

1. If payoff funds are received after December 29, 2017, an additional $14.08 interest is required for each day after that date.

2. If any charges (including escrow disbursements) are posted to your account after the date of this letter, you also will have to pay those charges.

3. You must continue to make your scheduled loan payments when due. A late charge of $86.67 may be assessed in accordance with your loan agreement if the loan installment is not received prior to the expiration of your grace period.

4. All payments that we previously have received and receive in the future must clear. If they do not clear, additional funds may be required to cover the shortage.

5. At our option, we will return funds that are insufficient to complete the payoff, along with a new quote. Interest will continue to accrue until the full payoff is received.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. **COLORADO:** SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

WICKER, THOMAS G
WICKER, ROCIO P
December 22, 2017
Loan number: [redacted]

The payoff total in this statement is good through December 29, 2017, unless a payoff statement with a later date is issued by us. If you do not pay prior to that date, please request an updated payoff statement prior to sending any funds. We do not provide a payoff statement over the phone. The terms of this payoff statement may only be modified when we issue a subsequent payoff statement.

If you currently make loan payments to us via AutoPay, it will be automatically discontinued once the loan is paid in full. However, if you would like to cancel your AutoPay before your loan is paid in full, please contact us at 866.570.5277. If a draft is scheduled to occur in less than five days, do not place a stop payment on the draft. If this results in any overpayment on the loan, a refund with be mailed within 30 days.

We will return any excess funds after the payoff as well as send any remaining escrow balance, subsequent refunds, and year-end information to the mailing address on file. Escrow funds will be released approximately 20 business days after the loan is paid in full.

Send your payment to the attention of the Transaction Processing Department. If we receive your payoff funds after 4 p.m. Pacific time, we will process them the next business day; otherwise, we will process payoff funds the same day that we receive them. The payment(s) to pay off the loan must clear in order for us to release the lien. Personal checks are subject to a 21-day hold or more to ensure the payment has cleared. Please note that there is an additional amount required to record a satisfaction of lien or other documentation with the local county offices in order to ensure that the public record accurately reflects the loan has been paid in full. This amount will be collected together with your payoff amount. Upon receipt of all funds required to pay your loan in full, including all contractual charges and the appropriate fee required to record a satisfaction or release of lien, we will forward the satisfaction and documents to the county for recording.

**PAYMENT INSTRUCTIONS**

| WIRING INSTRUCTIONS | OVERNIGHT ADDRESS |
|---|---|
| JP Morgan Chase Bank, Tampa, FL<br>ABA: 0210-0002-1<br>Account: [redacted]<br>Seterus, Inc.<br>Loan Number [redacted]<br>Borrower Name: WICKER, THOMAS G | Seterus, Inc.<br>Transaction Processing Department<br>14523 S.W. Millikan Way, Suite 200<br>Beaverton OR 97005<br>Loan Number [redacted]<br>Borrower Name: WICKER, THOMAS G |

WICKER, THOMAS G
WICKER, ROCIO P
December 22, 2017
Loan number: [redacted]

**THIS PAYOFF STATEMENT EXPIRES ON December 29, 2017.**

| | |
|---|---|
| Due Date of Next Payment: | September 01, 2013 |
| Interest Rate: | 4.87500% |
| Per Diem Rate: | $14.08 |
| Current Principal Balance | $105,419.05 |
| Unpaid Interest: | 22,663.76 |
| Escrow Overdraft: | 54248.53 |
| Deferred Principal: | 0.00 |
| Unpaid Open Charges Through December 22, 2017: | |
| Foreclosure: | 12,609.38 |
| LATE CHARGES: | 259.98 |
| Legal/Attorney Charges: | 1,906.84 |
| Property Inspection Costs: | 720.00 |
| Title Costs: | 300.00 |
| Less Suspense: | 0.00 |
| Pending Expense Credit: | 0.00 |
| Total Amount Secured by the Mortgage or Deed of Trust: | $198,127.54 |
| **Additional Required Contractual Fees** | |
| Recording Cost to Release Documents: | 26.00 |
| Total Amount Due as of December 29, 2017: | $198,153.54 |

If you have any questions, please contact us at 866.570.5277.

Sincerely,

Seterus, Inc.

IMPORTANT NOTE: The owner of your loan is Federal National Mortgage Association (Fannie Mae®), 3900 Wisconsin Avenue NW, Washington, DC 20016-2892, 800.232.6643. Fannie Mae has contracted with us to service and respond to inquiries about your loan. Please direct all correspondence to Seterus, Inc., PO Box 1077, Hartford, CT 06143-1077.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **THOMAS GEORGE WICKER, JR.,** | § | |
| | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:17-cv-99** |
| | § | |
| **SETERUS, INC.,** | § | |
| | § | |
| **Defendant/Counter-Plaintiff.** | § | |
| | § | |
| **SETERUS, INC.,** | § | |
| | § | |
| **Third-Party Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ROCIO P. WICKER, MIDFIRST BANK, N.A. FEDERALLY CHARTERED SAVINGS ASSOCIATION, AND THE UNITED STATES OF AMERICA INTERNAL REVENUE SERVICE,** | § | |
| | § | |
| **Third-Party Defendants.** | § | |

**DECLARATION OF PHILIP W. DANAHER**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following statements are true and correct:

1. My name is Philip W. Danaher. I am over the age of 18 years, have never been convicted of a crime, and am fully competent to make this declaration. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2. I am an attorney for Mackie Wolf Zientz & Mann, P.C., attorneys for Seterus, Inc. in the above-styled matter.

3. I certify that on or about October 11, 2017, my office sent to Plaintiff Thomas George Wicker, Jr. Seterus, Inc.'s First Request for Admission (the "Request for Admissions"). (Exh. B-1, B-2.) I further certify that my office has not received any response or objections to the Request for Admissions.

4. Attached hereto are Exhibits B-1 through B-2, which are true and correct copies of the transmittal letter to Plaintiff and the Request for Admissions.

B-1. Transmittal letter sending Request to Admissions to Plaintiff;

B-2. Request for Admissions;

Signed this 31st ~~th~~ day of January, 2018.

**PHILIP W. DANAHER**

# EXHIBIT B-1

MACKIE WOLF ZIENTZ & MANN, P.C.
ATTORNEYS AT LAW
14160 N. DALLAS PARKWAY, SUITE 900
DALLAS, TEXAS 75254
PHONE (214) 635-2650 • FAX (214) 635-2686

DIRECT DIAL: (214) 635-2677
EMAIL: staplin@mwzmlaw.com

October 11, 2017

Thomas G. Wicker, Jr.
220 Thunderbird Drive, Suite 3
El Paso, Texas 79912

Re: **Cause No. 3:17-cv-99; THOMAS GEORGE WICKER, JR. v. SETERUS, INC.; Currently pending in the United States District Court for the Western District of Texas, El Paso Division.**

Dear Mr. Wicker:

Enclosed please find Seterus, Inc.'s discovery requests to in connection with the above-referenced matter as follow:

1. First Request for Admissions to Plaintiff;
2. First Set of Interrogatories to Plaintiff; and
3. First Request for Production to Plaintiff.

Please contact our office should you have any questions. Thank you.

Sincerely,

*Susan Taplin*

Susan Taplin,
Senior Litigation Paralegal

Enclosures

# EXHIBIT B-2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **THOMAS GEORGE WICKER, JR.,**<br><br>**Plaintiff/Counter-Defendant,**<br><br>**v.**<br><br>**SETERUS, INC.,**<br><br>**Defendant/Counter-Plaintiff.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 3:17-cv-99-DB** |
| **SETERUS, INC.,**<br><br>**Third-Party Plaintiff,**<br><br>**v.**<br><br>**ROCIO P. WICKER, MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, AND THE UNITED STATES OF AMERICA INTERNAL REVENUE SERVICE,**<br><br>**Third-Party Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**SETERUS, INC.'S FIRST REQUESTS FOR ADMISSIONS TO PLAINTIFF**

**TO: Thomas George Wicker, Jr., Plaintiff, 220 Thunderbird Drive, Suite 3, El Paso, Texas 79912.**

Pursuant to the Federal Rules of Civil Procedure, Defendant/Counter-Plaintiff Seterus, Inc., ("Seterus" and/or "Defendant"), hereby requests that Plaintiff Thomas George Wicker, Jr., answer in writing the following set of Admissions within thirty (30) days from the date of service hereof. A failure to respond may result in deemed admissions.

Respectfully submitted,

By: ______________________
**MARK D. CRONENWETT**
Texas Bar No. 00787303
mcronenwett@mwzmlaw.com

**PHILIP W. DANAHER**
Texas Bar No. 24078395
pdanaher@mwzmlaw.com

**MACKIE WOLF ZIENTZ & MANN, P. C.**
14160 North Dallas Parkway, Suite 900
Dallas, TX 75254
Telephone: (214) 635-2650
Facsimile: (214) 635-2686

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 11th day of October, 2017, a true and correct copy of the foregoing document was delivered via regular U.S. Mail to the *pro se* Plaintiff listed below:

Thomas G. Wicker, Jr.
220 Thunderbird Drive, Suite 3
El Paso, Texas 79912
915-587-7878
915-587-8808 (Fax)

______________________
**PHILIP W. DANAHER**

**INSTRUCTIONS**

1. Each Request is to be set forth immediately above the answer or objection to the Request.

2. If you claim privilege as a ground for not responding completely to a Request or otherwise object to a Request, describe the factual and legal basis for your claim of privilege or other objection.

3. These Requests shall be continuing.

4. The conjunctions "and" and "or" shall be interpreted as meaning "and/or" and shall not be interpreted to exclude any information.

5. "Petition" shall mean and refer to the Original Petition filed in the above-numbered and entitled cause.

6. "Communication(s)" means any written or oral transfer or exchange between two or more persons of any information, including, but not limited to, personal conversations, correspondence, electronic mail, telephone calls, voice mail, telegrams, facsimile transmissions, computer data transmissions, telexes, and inter-office memoranda.

7. "Document(s)" means any tangible thing which may be the subject of a document request under the Federal Rules of Civil Procedure and includes, but is not limited to, all correspondence, memoranda, drafts, contracts, arrangements, understandings, studies, reports, and other written communications and computerized records of any kind, including, but not limited to, electronic mail and documents stored in computer files or databases.

8. "Identify" when used in reference to (a) a natural individual, requires you to state his or her full name, residential address, business address, and business telephone number; (b) a corporation, requires you to state its full corporate name, its state of incorporation, and the address and telephone number of its principal place of business; (c) an unincorporated business, requires you to state the full name under which the business is conducted and its business address and telephone number; (d) a document, requires you to state with regard to each document the title, the date, the author(s), the recipient(s), and its present location and custodian.

9. "Person" means any natural individual in any capacity whatsoever or any entity or organization.

10. "Relates to or relating to" means supports, evidences, describes, mentions, refers to, pertains to, contradicts, or comprises.

11. "Representative" means any person acting or purporting to act on behalf of the person or entity in question.

12. "You," "Your," or "Yourself," means Plaintiff, Thomas G. Wicker, Jr., and your agents and representatives.

13. "Seterus" shall mean Defendant Seterus, Inc.

14. "Communication" shall mean and refer to any mode of communication, including but not limited to conversations, correspondence, telephone conversations, facsimiles, and e-mail or other electronic communications.

15. "House" and "Property" shall mean and refer to the residence located at: 6533 Calle Bonita Lane, El Paso, Texas 79912.

16. "Note" shall mean the promissory note executed on or about April 29, 2004, originally payable to Quicken Loans, Inc.

## REQUESTS FOR ADMISSION

**REQUEST NO. 1:** Admit that Seterus has authority to enforce the Note.

**RESPONSE:**

**REQUEST NO. 2:** Admit that you are a party to the Note or Deed of Trust.

**RESPONSE:**

**REQUEST NO. 3:** Admit that you have a contractual relationship with Seterus.

**RESPONSE:**

**REQUEST NO. 4:** Admit that you do not have standing to contest the assignments of your Note or Deed of Trust.

**RESPONSE:**

**REQUEST NO. 5:** Admit that Seterus never represented to you in writing that it would not foreclose.

**RESPONSE:**

**REQUEST NO. 6:** Admit that Seterus did not make any material misrepresentations to you.

**RESPONSE:**

**REQUEST NO. 7:** Admit that Seterus does not owe you a fiduciary duty.

**RESPONSE:**

**REQUEST NO. 8:** Admit that you executed the Note in the amount of $221,000.00 on April 29, 2004.

**RESPONSE:**

**REQUEST NO. 9:**. Admit that you executed the Deed of Trust on April 29. 2004.

**RESPONSE:**

**REQUEST NO. 10:**. Admit that you are in default under the Note and Deed of Trust by failing to make all your monthly mortgage payments.

**RESPONSE:**

**REQUEST NO. 11:**. Admit that your default referred to in Request number 10 entitles Seterus to foreclose on the Property.

**RESPONSE:**

# EXHIBIT C

Doc# 20050033330

After Recording Please Return To:

TransUnion Settlement Solutions, Inc.
Recording Department
8215 Forest Point Blvd., Suite 100
Charlotte, NC 28273

~~T BANK, A~~
~~OCIATION~~

No Renewal

913745-100
11240

Space Above This Line For Recording Data

**This security instrument secures an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.**

# TEXAS HOME EQUITY DEED OF TRUST 1978076

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: your social security number or your driver's license number.**

**DATE AND PARTIES.** The date of this Texas Home Equity Deed of Trust (Security Instrument) is 04/01/2005. The parties and their addresses are:

**GRANTOR:**
**THOMAS G WICKER**
6533 Calle Bonita Lane
El Paso, Texas 79912

**ROCIO P WICKER**
6533 Calle Bonita Lane
El Paso, Texas 79912

**TRUSTEE:**
**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION**
an Oklahoma Financial Institution
PO BOX 268879
OKLAHOMA CITY, Oklahoma 73126-8879

**LENDER:**
**MIDFIRST BANK**
Organized and existing under the laws of the United States of America
501 NW GRAND BLVD, STE 230
OKLAHOMA CITY, Oklahoma 73126-8879
TIN: 73-0383055

VESTING: Thomas G Wicker and Rocio P Wicker, in title as Rocio P Valencia, husband and wife

**1. CONVEYANCE.** In consideration of Ten Dollars paid in hand, for the purpose of securing the Note (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably and voluntarily grants, conveys and sells unto Trustee, in trust for the benefit of Lender, with power of sale (as described in the "REMEDIES" provision below), the following described property:

Lot 20, block 2, Park Hills Unit One, an addition to the City of El Paso, El Paso County, Texas, according to the plat thereof on file in volume 72, page 4, real property records, El Paso County, Texas.

The property is located in El Paso County at 6533 Calle Bonita Lane, El Paso, Texas 79912.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Homestead Property).

**2. SECURED DEBTS.** This Security Instrument will secure the following Secured Debts:

A. **Specific Debts.** The following debts and all renewals, refinancings, modifications and replacements. A line of credit, No. 913745-100, dated April 1, 2005, from Grantor to Lender, with a loan amount of $50,000.00, with an interest rate of 6.25 percent per year and maturing on April 1, 2015.

B. **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument, to the extent permitted by law.

C. **Extension of Credit.** This debt is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (referred to herein as the "Extension of Credit").

**3. NO ADDITIONAL COLLATERAL.** This Extension of Credit is secured solely by the Homestead Property. Neither Lender nor any other party has required any collateral other than the Homestead Property to secure this Extension of Credit.

Any provision contained in this Security Instrument or any other document between the parties or with any third party, including but not limited to a deposit agreement, security agreement, pledge, security instrument, mortgage, deed of trust, or other loan agreement, which gives Lender a security interest in any personal or real property other than the Homestead Property, shall not apply to this Extension of Credit.

Any right of set-off, whether occurring by operation of law or by other contract between the parties, is specifically waived and disclaimed by Lender as to this Extension of Credit and shall not apply.

**4. PAYMENTS AND PREPAYMENTS.** Grantor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument. This Extension of Credit is payable in advance at any time without penalty or other charge.

**5. SUBROGATION.** Any amounts advanced by Lender to Grantor to take out outstanding liens against any or all of the Homestead Property have been advanced at Grantor's request, and upon Grantor's representations that such amounts are due and are secured by valid liens against the Homestead Property. To the extent permitted by law, Lender will be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, including any interest of Contractor, regardless of whether said liens are acquired by Lender by assignment or are released by the holder thereof upon payment.

**6. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Homestead Property to Trustee, in trust, with power of sale. Grantor also warrants that the Homestead Property is unencumbered, except for encumbrances of record and any encumbrances expressly approved by the Lender in writing.

**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Homestead Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**8. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Homestead Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Homestead Property against any claims that would impair the lien of this Security Instrument. To the extent permitted by law, Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Homestead Property.

**9. ASSUMPTIONS.** Someone buying the Homestead Property cannot assume this Security Instrument and the Secured Debts. Lender may declare the entire balance of the Secured Debts, less any unearned charges, to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, or transfer of the Homestead Property.

**10. WARRANTIES AND REPRESENTATIONS.** Grantor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Grantor or to which Grantor is a party.

**11. HOMESTEAD PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Homestead Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Homestead Property. Grantor will keep the Homestead Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Homestead Property.

Lender or Lender's agents may, at Lender's option, peaceably enter the Homestead Property at any reasonable time for the purpose of inspecting the Homestead Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Homestead Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**12. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice unless otherwise required by law, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance to the extent permitted by law. Lender's right to perform for Grantor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument to the extent permitted by law. If any construction on the Homestead Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Homestead Property, including completion of the construction.

**13. DEFAULT.** Grantor will be in default if any of the following occur:

**A. Payments.** Grantor fails to make a payment when due.

**B. Taxes.** Grantor fails to pay taxes properly levied against the homestead property securing the Secured Debts when due.

**C. Material Obligations.** Grantor fails to perform any material obligations included in any agreement securing this Security Instrument.

**D. Prior Debts.** Grantor defaults on other indebtedness secured by a prior valid lien against the homestead Property.

**E. Death or Incompetency.** I die or am declared legally incompetent.

**14. REMEDIES.** Lender may use any and all remedies Lender has under state or federal law or in any instrument evidencing or pertaining to the Secured Debts. Any amounts advanced on Grantor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Grantor's default.

Subject to any right to cure, required time schedules or any other notice rights Grantor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

In the event of default, it will be the duty of the Trustee, at the request of Lender (which request is hereby conclusively presumed), to petition a court of competent jurisdiction to issue an order of foreclosure. Trustee will give any required notice of sale including the time, terms and place of sale and a description of the Homestead Property to be sold as required by the applicable law in effect at the time of the proposed sale.

The lien and power of sale evidenced by this Security Instrument may be foreclosed only after first obtaining a court order to the extent required by law. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution, as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such rules, and Grantor understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Grantor in a judicial proceeding.

To the extent permitted by law, a mortgage servicer on behalf of Lender may manage information regarding Grantor's last known address, appoint a trustee or substitute trustee, including, without limitation, a perpetual substitute trustee, and administer all aspects of a foreclosure as authorized in this Security Instrument or by applicable law. The Lender may include, without limitation, a book entry system to the extent permitted by law.

Upon any sale of the Homestead Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Homestead Property sold which conveys indefeasible title to the purchaser, without warranty or with covenants or special or general warranty from Grantor as determined by the Trustee, and after first paying all fees, charges and costs, shall pay to Lender all moneys advances for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any to Grantor. Before making and delivering this special or warranty deed, Trustee will pay all fees, charges and costs, pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debts, and pay the surplus, if any, to Grantor. Lender may purchase the Homestead Property. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Lender. The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein to the extent permitted by law.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth to the extent permitted by law. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require complete cure of any existing default to the extent permitted by law. By choosing any one or more of these remedies Lender does not give up Lender's right to use any other remedy. Lender does not waive a default if Lender chooses not to use a remedy. By electing not to use any remedy, Lender does not waive Lender's right to later consider the event a default and to use any remedies if the default continues or happens again to the extent permitted by law.

No acceleration of the Secured Debts or foreclosure shall occur because of a decrease in market value of the Homestead Property or because of Grantor's default under other indebtedness not secured by a prior lien against the Homestead Property.

**15. NO PERSONAL LIABILITY.** This Security Instrument and the Note are without recourse for personal liability against each Grantor and the spouse of each Grantor, unless Grantor or the spouse of Grantor obtained the Extension of Credit by actual fraud. This means that, absent actual fraud, Lender may enforce its rights under the Security Instrument solely against the Homestead Property and not personally against Grantor or the spouse of Grantor. If the Extension of Credit is obtained by actual fraud, any Grantor who has signed the Note will be personally liable to the extent permitted by law for the payment of any amounts due under the Note or the Security Instrument and a personal judgment may be obtained against a Grantor who has signed the Note, including a judgment for any deficiency that results from Lender's sale of Homestead Property for an amount less than is owing under the Note.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this section shall not impair in any way the right that Lender may have to collect all sums due under the Note or this Security Instrument or prejudice any rights to any promises or conditions of this Security Instrument.

**16. EXPENSES, ADVANCES ON COVENANTS, COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution and other applicable

law, Grantor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument. Grantor agrees to pay:

A. Lender's expenses if Grantor breaches any covenant in this Security Instrument.

B. On demand, any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Homestead Property and Lender's security interest.

C. Reasonable attorneys' fees paid to an attorney who is not an employee of Lender, court costs and other legal expenses.

These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Note.

To the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debts as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Homestead Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Homestead Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and will remain in full compliance with any applicable Environmental Law.

C. Grantor will immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Homestead Property or there is a violation of any Environmental Law concerning the Homestead Property. In such an event, Grantor will take all necessary remedial action in accordance with any Environmental Law.

D. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Homestead Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims to the extent permitted by law. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Homestead Property to the extent permitted by law. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. ESCROW FOR TAXES AND INSURANCE.** Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**20. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor without any other formality than the designation in writing. The successor trustee, without conveyance of the Homestead Property, will succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**21. WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement rights relating to the Homestead Property.

**22. LEGAL COMPLIANCE.** It is the intention of Grantor and Lender to comply with applicable law. In each and every instance, the rights of the Grantor and Lender shall be limited by applicable law (to the extent such laws may not be effectively waived), construed so as to comply with such laws, and the rights of the Grantor and Lender may not be exercised except to the extent permitted by applicable law.

In no event shall any provision of this Security Instrument or the Note, charge or receipt ever obligate Grantor to pay, or allow Lender to collect, interest or other charges on the Extension of Credit at a rate or amount greater than the maximum rate or amount permitted by applicable law. In the event that any law is interpreted so that any contract, charge or receipt violates such law by reason of the acceleration of the Note or other contingency or even whatsoever, such contract, charge or receipt is hereby automatically adjusted to eliminate such violation. To the extent permitted by law, any amounts paid to Lender in excess of the amounts permitted by applicable law shall, at Lender's option, be applied to reduce amounts owed or owing or refunded to Grantor. If a refund reduces principal, the reduction will be treated as a partial prepayment. To the extent permitted by law, any curative measures made by Lender shall further absolve Lender of any forfeiture or liability regarding the same.

All contracts, charges and receipts between Grantor and Lender are expressly limited so that any loan charges or fees (other than interest) contracted for, charged or received with respect to Grantor, any owner or the spouse of any owner of the Homestead Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law, including, without limitation, Section 50(a)(6), Article XVI of the Texas Constitution.

It is the express intention of Grantor and Lender to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Security Instrument, the Note, or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement, if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document. Without limitation of the foregoing, to the extent permitted by law, any curative measures made by Lender shall further absolve Lender of any forfeiture or liability regarding the same.

Grantor acknowledges that the Extension of Credit is a home-equity extension of credit under Section 50(a)(6), Article XVI of the Texas Constitution.

A. The maximum principal amount that may be extended under the account, when added to the aggregate total of the outstanding principal balances of all indebtedness secured by the Homestead Property on the date the Note is established, does not exceed an amount described under Section 50(a)(6)(B).

B. Repayment is to be made in regular periodic installments, not more often than every 14 days and not less often than monthly, beginning not later than two months from the date the Note is established.

**23. COLLATERAL PROTECTION INSURANCE.** **Property insurance is required.** Grantor agrees to buy insurance on the Property in the amount Lender specifies, subject to applicable law. **Grantor shall have the option of furnishing any required insurance either through existing policies of insurance owned or controlled by Grantor or procuring and furnishing the equivalent coverage through any insurance company authorized to do business in Texas or an eligible surplus line insurer to the extent permitted by law.** Grantor will name Lender as loss payee under the policy. Grantor may be required to deliver to Lender a copy of the collateral protection insurance policy and proof of payment of premiums.

If Grantor fails to meet any of these requirements, Lender may obtain collateral protection insurance on Grantor's behalf. Lender is not required to purchase any type or amount of insurance. To the extent permitted by law, Lender may obtain insurance that will cover either the actual amount of unpaid indebtedness or the replacement cost of improvements, subject to policy limits. If Lender purchases insurance for the Property, Grantor will be responsible for the cost of that insurance, including interest and any other charges incurred by Lender in connection with the placement of collateral protection insurance to the extent permitted by law. Grantor understands that insurance Lender obtains may cost significantly greater than the cost of insurance Grantor could have obtained. Amounts that Grantor owes are due and payable upon demand or on such other terms as Lender requires to the extent permitted by law.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Homestead Property or to the Note, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment to the extent permitted by law. Any excess will be paid to the Grantor. If the Homestead Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Homestead Property before the acquisition shall pass to Lender to the extent of the Note immediately before the acquisition to the extent permitted by law.

**Notice Regarding Junior-Lien Transactions. Required property insurance being sold by or through the Lender in connection with closing is at a premium or rate of charge not fixed or approved by the State Board of Insurance.**

**24. APPLICABLE LAW; SEVERABILITY.** This Security Instrument is governed by federal law and the laws of the State of Texas. It is the express intention of the Lender and Grantor to structure this Extension of Credit to conform strictly to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. In no event shall Grantor or Lender be obligated to perform any act, or be bound by any requirement that would conflict therewith.

Any provision in this Security Instrument, attachments, or any agreement related to the Note that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any provision of this Security Instrument cannot be enforced according to its terms, that provision will be severed and will not affect the enforceability of the remainder of this Security Instrument.

**25. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** Subject to the NO PERSONAL LIABILITY section, all duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Homestead Property to secure payment of the Note and Grantor does not agree to be personally responsible regarding the Note. Grantor agrees that Lender and any party to this Security Instrument may, to the extent permitted by law, extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**26. AMENDMENT; MODIFICATION; INTERPRETATION.** This Security Instrument may not be amended or modified by oral agreement. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**27. NOTICE OF FAILURE TO COMPLY, RIGHT TO COMPLY, AND FORFEITURE.** Grantor agrees to provide written notice to Lender of Lender's failure to comply with its obligations under this Extension of Credit. Unless applicable

law requires a different method, Grantor agrees to provide this written notice in a manner that provides proof of delivery to Lender by a third party, such as by certified or registered U.S. Mail, licensed courier or express mail service.

Except as otherwise allowed by law, Lender must be provided an opportunity to comply with Lender's obligations under this Extension of Credit no later than the 60th day after the date the Lender is notified by the Grantor of the Lender's failure to comply or such other period of time permitted by applicable law. Grantor further agrees that Lender may, for the sole purpose of complying with Lender's obligations under Section 50, Article XVI of the Texas Constitution, amend or modify this Security Instrument or any other document related to this Extension of Credit by providing a written correction notice to Grantor to the extent permitted by law. Grantor agrees to cooperate with Lender to effect any compliance. Grantor agrees that Lender's right to comply as provided in this provision shall survive payoff of the Extension of Credit.

To the extent required by law, Lender will be subject to forfeiture of all principal and interest of this Extension of Credit if Lender fails to comply with the Lender's obligations under the Extension of Credit no later than the 60th day after Grantor provides written notice to Lender of its failure to comply in accordance with the Note, this Security Instrument, and applicable law.

**28. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law and except as provided in the provision above entitled "NOTICE OF FAILURE TO COMPLY, RIGHT TO COMPLY, AND FORFEITURE", any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one party will be deemed to be notice to all parties. Grantor will inform Lender in writing of any change in Grantor's name, address or other application information. Grantor will provide Lender any financial statements or information Lender requests. All financial statements and information Grantor gives Lender will be correct and complete. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and to confirm Lender's lien status on any Homestead Property. Time is of the essence.

**29. RELEASE.** To the extent permitted by law, this Security Instrument shall remain in effect until released. Within a reasonable time after termination and full payment of the Extension of Credit, the Lender shall cancel and return the Note to the Grantor and give the Grantor, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Grantor shall pay only recording costs if allowed by law. **TO THE EXTENT PERMITTED BY LAW, GRANTOR'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF THE LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION AS TO THIS EXTENSION OF CREDIT.**

**30. COPIES.** Grantor shall be given, at the time this Extension of Credit is made, a copy of all documents signed by the Grantor related to the Extension of Credit.

**31. PROCEEDS.** Grantor has not been required to apply the proceeds of the Extension of Credit to repay another debt, except debt secured by the Homestead Property or debt to another lender.

**32. NO ASSIGNMENT OF WAGES; NO CONFESSION OF JUDGMENT.** Grantor has not assigned wages as security for the Extension of Credit.

Grantor has not signed any confession of judgment or power of attorney to Lender or any third party to confess judgment or appear for Grantor in a judicial proceeding.

**33. NO OPEN END CREDIT.** Grantor and Lender agree that this Extension of Credit is not a form of open end credit. Payments made against the outstanding balance of this Extension of Credit will not be made available to Grantor to re-borrow.

**34. ACKNOWLEDGMENT OF FAIR MARKET VALUE.** On the date the Extension of Credit is made, Grantor and Lender have executed a written acknowledgment as to the fair market value of Homestead Property.

**35. HOMESTEAD.** Grantor occupies and uses the property secured by this Security Instrument as Grantor's Texas homestead.

**SIGNATURES.** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments.

**DO NOT SIGN IF THERE ARE ANY BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW, OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.**

**YOU MAY, WITHIN 3 BUSINESS DAYS AFTER CLOSING, RESCIND THIS LOAN WITHOUT PENALTY OR CHARGE.**

**GRANTOR:**

Thomas G. Wicker

Thomas G Wicker
Individually

Rocio P. Wicker

Rocio P Wicker
Individually

**ACKNOWLEDGMENT.**

(Individual)

State OF Texas , County OF El Paso ss.

This instrument was acknowledged before me this 1st day of April , 2005 by Thomas G Wicker , and Rocio P Wicker .

My commission expires:

(Notary Public)

ROBERT JOSEPH TRUHILL
Notary Public, State of Texas
My Commission Expires
NOVEMBER 4, 2006

Doc# 20050033330
#Pages 7 #NFPages 1
4/18/2005 2:52:49 PM
Filed & Recorded in
Official Records of
EL PASO COUNTY
WALDO ALARCON
COUNTY CLERK
Fees $26.00

8

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded by document number in the Official Public Records of Real Property in El Paso County.

Waldo Alarcon

EL PASO COUNTY, TEXAS

# EXHIBIT D

5216

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

DOC# 20160003995

Area:
SMALL BUSINESS/SELF EMPLOYED AREA #5
Lien Unit Phone: (800) 829-3903

Serial Number 193423716

For Optional Use by Recording Office

2016 JAN 19 PM 1:18

**As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

Name of Taxpayer THOMAS G WICKER JR

Residence 6533 CALLE BONITA LN
EL PASO, TX 79912-7500

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2011 | XXX-XX-7638 | 01/19/2015 | 02/18/2025 | 12949.10 |
| 1040 | 12/31/2012 | XXX-XX-7638 | 03/30/2015 | 04/29/2025 | 22262.88 |

Place of Filing

EL PASO COUNTY
EL PASO, TX 79901

Total $ 35211.98

This notice was prepared and signed at NASHVILLE, TN, on this,

the 07th day of January, 2016.

Signature Cheryl Cordero
for G.J. CARTER-LOUIS

Title
ACS SBSE
(800) 829-3903

25-00-0001

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 1 - Kept By Recording Office**

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X

WTM

Doc# 20160003995
#Pages 1 #NFPages 1
1/20/2016 11:13:23 AM
Filed & Recorded in
Official Records of
El Paso County
Delia Briones
County Clerk
Fees $31.00

I hereby certify that this instrument was filed on the date and time stamped hereon by me and was duly recorded by document number in the Official Public Records of Real Property in El Paso County.

EL PASO COUNTY, TEXAS

# EXHIBIT E

Norma L. Favela
District Clerk
El Paso County
2014DCV4089

| | | |
|---|---|---|
| THOMAS GEORGE WICKER, JR. and ROCIO PADILLA WICKER, | § | |
| Plaintiffs, | § | |
| v. | § | No. 2014 - ______ |
| BANK OF AMERICA, N.A., BEVERLY MITRISIN, and CHARLES THOMAS NATIONS, | § | |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL PETITION AND APPLICATION FOR A TEMPORARY RESTRAINING ORDER

**TO THE HONORABLE JUDGE OF THE COURT:**

**COME NOW** THOMAS GEORGE WICKER, JR. and ROCIO PADILLA WICKER, Plaintiffs, and file this Petition, complaining of BANK OF AMERICA, N.A., BEVERLY MITRISIN, and CHARLES THOMAS NATIONS, Defendants, and for cause of action show:

### I. DISCOVERY CONTROL PLAN

Pursuant to TEX. R. CIV. P. 190.1, Plaintiffs intend to conduct discovery in this case under Level One. The amount in controversy is less than $75,000 exclusive of interest and costs.

### II. PLAINTIFFS

Plaintiffs are all domiciled in El Paso County, Texas.

Case 3:15-cv-00015-FM Document 1-1 Filed 01/21/15 Page 6 of 20

## III. DEFENDANTS

Defendant, Bank of America, N.A., is a foreign corporation. CIT can be served with process by serving its registered agent CT Corporation System at its home office 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201. Defendants, Beverly Mitrisin and Charles As a result of the emergency nature of this Petition, the Plaintiffs are requesting the Court to authorize notice of the TRO to be furnished directly to counsel for Bank of America or delivered to the Substitute Trustee by facsimile or hand delivery. Beverly Mitrisin and Charles Thomas Nations are nominal parties acting as substitute trustees of Bank of America. They are located at 13770 Noel Road #801529, Dallas, Texas 75380-1529. This method is reasonably calculated to give notice to the true party in interest, Bank of America, and avoid irreparable harm under the exigent nature of the circumstances.

## IV. JURISDICTION AND VENUE

The Court has jurisdiction over this case and venue in this action is proper in El Paso County, Texas, in that the cause of action arose in whole or in substantial part in this county.

## V. FACTUAL BACKGROUND

Plaintiffs own a home located at 6533 Calle Bonita Lane in El Paso, Texas. The original principal amount of the loan was approximately $217,000. This loan was a fifteen year refinance that was originally serviced by Countrywide. Plaintiffs have paid on this loan for numerous years. The latest properly calculated principal amount due on this loan is approximately $105,000. The home is conservatively valued at $315,000 meaning that

Case 3:15-cv-00015-FM Document 1-1 Filed 01/21/15 Page 7 of 20

Plaintiffs have well in excess of $200,000 in equity which Bank of America is improperly attempting to obtain.

**VI.**

Plaintiffs missed several payments and Bank of America then completely miscalculated the amount due on the Note attempting to force Plaintiffs to pay significantly more than was owed. Additionally, Bank of America has also completely miscalculated the amounts supposedly due for forced escrow once again attempting to force Plaintiffs to pay far more than is owed. Bank of America has also improperly attempted to perform a short sale on the home which would result in Bank of America taking Plaintiffs' equity. Plaintiffs remain ready, willing, and able to pay the proper amounts due on the Note particularly once Bank of America reimburses them for the damages they have suffered by virtue of its outrageous conduct.

**VII. BREACH OF CONTRACT**

Bank of America has breached the contract with Plaintiffs by improperly calculating the amount due on the note, improperly calculating forced escrow, and posting the home for foreclosure based upon false amounts due.

**VII. TEMPORARY RESTRAINING ORDER**

Bank of America has improperly posted the Plaintiffs' home for foreclosure. Plaintiffs seek the issuance of a temporary restraining order as well as temporary and permanent injunctive orders enjoining foreclosure on the home.

VIII.

Pending issuance of any injunctive relief in this action, Plaintiffs seek issuance of a temporary restraining order restraining Defendants from foreclosing or posting for foreclosure the home by non-judicial means.

IX.

It is probable that Plaintiffs will recover from Bank of America because Bank of America breached the contract. Plaintiffs also intend to amend this Petition to add a claim for violation of the Texas Deceptive Trade Practice Consumer Protection Act ("DTPA").

X.

If Plaintiffs' request for injunctive relief is not granted, Plaintiffs will suffer imminent harm because they could lose their home.

XI.

The harm that will result if the Court does not grant Plaintiffs a temporary restraining order is irreparable.

XII.

Plaintiffs have no adequate legal remedy for the relief sought in this action, and will suffer immediate substantial and irreparable damage unless the foreclosure is prevented. Plaintiffs are willing to post bond if the court deems it appropriate or pay money into the registry of the Court.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully requests that Defendants be cited to appear and answer and that have judgment against Bank of America for:

Case 3:15-cv-00015-FM Document 1-1 Filed 01/21/15 Page 9 of 20

1. All of their damages;
2. A temporary and permanent injunction halting non-judicial foreclosure;
3. A permanent injunction enjoining non-judicial foreclosure;
4. Any other injunctive relief that the Court deems just and proper;
5. Pre- and post-judgment interest as allowed by law;
6. Costs of suit; and
7. Any other relief, in law or equity, to which Plaintiffs are entitled.

Respectfully submitted,

MENDEL • BLUMENFELD, LLP
5809 Acacia Circle
El Paso, Texas 79912
(915) 587-7878
(915) 587-8808 (Facsimile)

By: /s/
THOMAS G. WICKER, JR.
State Bar No. 21419100
Attorneys for Plaintiffs

Date: December 30, 2014

Case 3:15-cv-00015-FM Document 1-1 Filed 01/21/15 Page 10 of 20

**VERIFICATION**

State of Texas §
§
County of El Paso §

Before me, the undersigned notary public, on this day personally appeared Thomas George Wicker, Jr. known to me who after being duly sworn, upon his oath stated that he is authorized representative of Plaintiffs in the above-captioned cause; that he has read the foregoing document; and that every statement in paragraphs V and VI is true and correct and within his personal knowledge.

Thomas George W: M
Thomas George Wicker, Jr.

SUBSCRIBED AND SWORN TO before me on this 30th day of December, 2014, to which I place my signature and official seal.

LAURA BRONSON
Notary Public, State of Texas
My Commission Expires 11-29-2015

Laura Bronson
[Name of Notary Public]

My Commission Expires:
Notary Public for the State of Texas

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **THOMAS GEORGE WICKER, JR. and ROCIO PADILLA WICKER,** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **EP-15-CV-00015-FM** |
| **BANK OF AMERICA, N.A., BEVERLY MITRISIN, and CHARLES THOMAS NATIONS,** | § | |
| **Defendants.** | § | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Before the court is "Defendant's Motion to Dismiss Pursuant [sic] Federal Rule of Civil Procedure 12(b)(6)" ("Motion") [ECF No. 4], filed January 28, 2015 by Defendant Bank of America, N.A. ("Bank of America"); and Plaintiffs Thomas George Wicker, Jr. and Rocio Padilla Wicker's (collectively, "Plaintiffs") "Plaintiffs' Response to Defendant's Motion to Dismiss Pursuant to Rule 12(b)6 [sic]" ("Response"), filed February 10, 2015.[1] After considering the Motion, Response, and applicable law, the Motion is **GRANTED**.

## I. BACKGROUND

### *A. Procedural History*

Plaintiffs are Texas residents who own a home at 6533 Calle Bonita Lane in El Paso, Texas (the "Property").[2] The Property secures a 15-year loan serviced by Bank of America, a North Carolina corporation.[3] After Plaintiffs missed several payments on the loan, Bank of America initiated foreclosure

---

[1] Although Local Rule CV-7(f)(2) entitles Bank of America to file a reply within seven days of Plaintiffs' Response, no additional filings are needed to fully evaluate the Motion.

[2] "Notice of Removal" ("2015 Notice of Removal"), Ex. B-1, "Plaintiffs' Original Petition and Application for a Temporary Restraining Order" ("Plaintiffs' Second Petition"), at 1–2, ECF No. 1-1, filed Jan. 21, 2015.

[3] 2015 Notice Removal 1–3 ¶¶ 2, 8; Pls.' Second Pet. 2.

against the Property.[4]

On February 28, 2014, Plaintiffs filed a petition ("Plaintiffs' First Petition") against Bank of America, Beverly Mitrisin ("Mitrisin"), and Charles Thomas Nations ("Nations") in the 243rd District Court of El Paso County, Texas.[5] The pleading listed Mitrisin and Nations as located in Texas.[6] Plaintiffs' First Petition asserted a claim solely against Bank of America for breach of contract for "improperly calculating the amount due on the note, improperly calculating forced escrow, and posting the [Property] for foreclosure based upon false amounts due."[7] Plaintiffs' First Petition also requested a temporary restraining order solely against Bank of America to enjoin foreclosure on the Property.[8] The pleading admitted Plaintiffs missed several payments on their loan before any breach by Bank of America.[9]

The case was removed to this court on March 12, 2014 as cause number 3:14-cv-00091-PRM.[10] Subsequently, Plaintiffs filed "Plaintiffs' First Amended Complaint," which dismissed Mitrisin and Nations and added a claim for violation of the Real Estate Settlement Procedures Act ("RESPA").[11] This pleading conceded not only that Plaintiffs had failed to make loan payments, but also that Plaintiffs had

---

[4] Pls.' Second Pet. 3.

[5] *Wicker, Jr. v. Bank of America, N.A.*, No. 3:14-cv-00091-PRM (W.D. Tex. Mar. 12, 2014), "Notice of Removal" ("2014 Notice of Removal"), Ex. B-1, "Plaintiffs' Original Petition and Application for a Temporary Restraining Order," ECF No. 1-1.

[6] *Id.* at 2. The court will assume Mitrisin and Nations are Texas citizens.

[7] *Id.* at 3.

[8] *Id.*

[9] *Id.*

[10] *Wicker, Jr. v. Bank of America, N.A.*, No. 3:14-cv-00091-PRM (W.D. Tex. Mar. 12, 2014), 2014 Notice Removal, ECF No. 1.

[11] *Wicker, Jr. v. Bank of America, N.A.*, No. 3:14-cv-00091-PRM (W.D. Tex. May 9, 2014), "Plaintiffs' First Amended Complaint," at 4–5 ¶¶ 35–36, ECF No. 15.

Case 3:15-cv-00015-FM Document 7 Filed 02/13/15 Page 3 of 10

not paid property taxes on the Property after 2011.[12]

On June 6, 2014, Plaintiffs filed "Plaintiffs' Second Amended Complaint," which added a claim for violation of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA").[13] Like their previous amended complaint, Plaintiffs' Second Amended Complaint admitted Plaintiffs' failures to make loan payments and pay property taxes.[14] On August 27, 2014, the court dismissed Plaintiffs' breach of contract and DTPA claims without prejudice, and dismissed their RESPA claim with prejudice.[15] In dismissing Plaintiffs' breach of contract claim, the court concluded Plaintiffs were themselves in breach of contract due to their failures to pay interest, principal, and property taxes.[16]

On December 30, 2014, Plaintiffs' Second Petition was filed in the 243rd District Court of El Paso County, Texas, asserting a breach of contract claim and requesting a temporary restraining order against Bank of America.[17] Mitrisin and Nations were named as defendants.[18] Aside from minor formatting changes, this pleading is almost identical to Plaintiffs' First Petition. There are only three substantive differences. First, Plaintiffs assert the amount in controversy is less than $75,000.00.[19]

---

[12] *See id.* at 2 ¶ 14 ("Plaintiffs paid property taxes on the home from 2004 through 2011."); *id.* at 3 ¶ 17 ("Plaintiffs missed principal and interest payments due in September, October, and November of 2013.").

[13] *Wicker, Jr. v. Bank of America, N.A.*, No. 3:14-cv-00091-PRM (W.D. Tex. June 6, 2014), "Plaintiffs' Second Amended Complaint," at 5 ¶¶ 38–41, ECF No. 21.

[14] *Id.* at 2–3 ¶¶ 14, 17.

[15] *Wicker, Jr. v. Bank of America, N.A.*, No. 3:14-cv-00091-PRM (W.D. Tex. Aug. 27, 2014), "Order Granting Defendant's Motion to Dismiss," at 14, ECF No. 33.

[16] *Id.* at 8.

[17] Pls.' Second Pet. 3.

[18] *Id.* at 1.

[19] *Compare id.* at 1 ("The amount in controversy is less than $75,000 exclusive of interest and costs."), *with* Pls.' First Pet. 1 ("The amount in controversy is in excess of $100,000.").

Case 3:15-cv-00015-FM Document 7 Filed 02/13/15 Page 4 of 10

Second, Plaintiffs request a different amount of discovery.[20] Third, Plaintiffs assert the Property is "conservatively valued" at $315,000, rather than $340,000 as originally stated.[21]

Bank of America removed the cause to this court on January 21, 2015 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.[22] On January 28, 2015, Bank of America moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Plaintiffs responded to the Motion on February 10, 2015.

*B. Bank of America's Arguments*

Bank of America asserts Plaintiffs' breach of contract claim is facially deficient, because: (1) Plaintiffs concede they breached the loan agreement before any alleged breach by Bank of America, and (2) they fail to allege what provision of the loan agreement was breached by Bank of America.[23] Bank of America further argues Plaintiffs should not be given an opportunity to amend as Plaintiffs' previous pleadings indicate any amendment would be futile.[24]

*C. Plaintiffs' Arguments*

Plaintiffs contend Bank of America's Motion is "horribly premature," as they are still determining whether to file either a motion to remand or an amended complaint.[25] Plaintiffs contend that if their complaint is amended, they will include a request for "a declaratory judgment over the imposition

---

[20] *Compare* Pls.' Second Pet. 1 ("Plaintiffs intend to conduct discovery in this case under Level One."), *with* Pls.' First Pet. 1 ("Plaintiffs intend to conduct discovery in this case under Level Three.").

[21] Pls.' First Pet. 2; Pls.' Second Pet. 2.

[22] 2015 Notice Removal 1. Although Bank of America also stated the removal was pursuant to 28 U.S.C. § 1348 ("section 1348"), that section applies to cases commenced against "any national banking association" by "the United States, or by direction of any officer thereof." 28 U.S.C. § 1348. Section 1348 is, therefore, not applicable to this cause.

[23] Mot. 5–6 ¶¶ 10–12

[24] *Id.* at 6–7 ¶¶ 13–15.

[25] Pls.' Resp. 1–2 ¶ 1.

Case 3:15-cv-00015-FM Document 7 Filed 02/13/15 Page 5 of 10

of escrow" due to a purported waiver by Bank of America, as well as "further plead their claim concerning" breach of a deed of trust.[26] Plaintiffs also assert Bank of America misrepresents "the position of Plaintiffs concerning their home" and "what Plaintiffs have offered concerning the home.[27] To the extent dismissal of their petition or a future amended complaint is warranted, Plaintiffs assert the dismissal should be without prejudice.[28]

## II. APPLICABLE LAW

### *A. Diversity Jurisdiction*

Under 28 U.S.C. § 1332(a)(1), "district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[29]

In a case for damages, the amount in controversy is ordinarily determined by the amount of damages claimed by the plaintiff.[30] When injunctive relief is requested, the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented."[31]

In order for diversity of citizenship to be present, no opposing parties can be citizens of the same state.[32] An exception to this rule applies when a party has been improperly joined.[33] "To establish a

---

[26] *Id.* at 2 ¶ 2. It is not clear whether Plaintiffs intend to elaborate on their existing breach of contract claim or to advance a new claim for breach of a deed of trust.

[27] *Id.* at 2–3 ¶¶ 3–4

[28] *Id.* at 3 ¶¶ 6–7.

[29] 28 U.S.C. § 1332(a)(1).

[30] *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).

[31] *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983) (per curiam).

[32] *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam).

[33] *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005).

Case 3:18-cv-00015-FM Document 7 Filed 02/13/18 Page 6 of 10

claim for improper joinder, the party seeking removal must demonstrate either (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[34]

*B. Motion to Dismiss for Failure to State a Claim*

Rule 12(b)(6) allows a complaint to be dismissed for "failure to state a claim upon which relief can be granted."[35] "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[36] To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[37] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[38] "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[39] Therefore, a complaint is not required to set out "detailed factual allegations," but does need to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[40] Although the court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment.[41]

---

[34] *Id.* (quotation marks and citation omitted).

[35] Fed. R. Civ. P. 12(b)(6).

[36] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (internal quotation marks and citation omitted); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[37] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[39] *Id*. (citing *Twombly*, 550 U.S. at 556).

[40] *Twombly*, 550 U.S. at 555.

[41] *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

Case 3:15-cv-00015-FM Document 7 Filed 02/13/15 Page 7 of 10

## III. DISCUSSION

*A. Whether Diversity Jurisdiction is Present*

Plaintiffs concede Bank of America is not a Texas resident.[42] Consequently, there are two possible obstacles to diversity jurisdiction: (1) Mitrisin, Nations, and Plaintiffs are all Texas citizens; and 2) Plaintiffs assert the amount in controversy is less than $75,000.00.

1. Mitrisin and Nations

By its terms, Plaintiffs' Second Petition asserts a breach of contract claim and a request for a temporary restraining order against Bank of America, not against either Mitrisin or Nations.[43] Although the pleading requests a temporary restraining order prohibiting "Defendants" from foreclosing on the Property or posting it for foreclosure,[44] it does not indicate how either Mitrisin or Nations is associated with the foreclosure.

In one of the few places Mitrisin and Nations are mentioned by name in Plaintiffs' Second Petition, they are described as "nominal parties acting as substitute trustees [for] Bank of America" in order to provide Bank of America with notice.[45] Even if Plaintiffs did not describe Mitrisin and Nations as nominal parties, they are not necessary as substitute trustees for the court to provide Plaintiffs with any relief.[46] As Plaintiffs have failed to state any claims against Mitrisin or Nations, and it is clear they

---

[42] *See* Pls.' Second Pet. 2 ("Defendant, Bank of America, N.A., is a foreign corporation.").

[43] *See id.* at 3 (arguing "Bank of America has breached the contract with Plaintiffs," and "Bank of America has improperly posted the Plaintiffs' home for foreclosure").

[44] *Id.* at 4.

[45] *Id.* at 2. The only other instance where the two parties are mentioned is a fragment, which says in its entirety, "Defendants, Beverly Mitrisin and Charles." *Id.*

[46] *Zavala v. M & T Trust Co.*, No. SA-11-CV-956-XR, 2011 WL 6739614, at *2–3 (W.D. Tex. Dec. 22, 2011) (citing Tex. Prop. Code § 51.007) (noting that for a plaintiff contesting a residential foreclosure, a "substitute trustee is not a necessary party for Plaintiff to obtain the injunctive relief he seeks").

Case 3:15-cv-00015-FM Document 7 Filed 02/13/15 Page 8 of 10

are not parties necessary to provide Plaintiffs with any relief, they have been wrongfully joined.[47] Accordingly, they are disregarded for determining diversity jurisdiction.

2. <u>Amount in Controversy</u>

Bank of America has provided information from El Paso County's Appraisal District that lists the Property as having an assessed value of $313,919.00.[48]

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."[49] Because Plaintiffs are seeking to prevent foreclosure on the Property, the amount in controversy is equal to the Property's value. As Bank of America has shown the amount in controversy is well above $75,000.00, they have established this requirement is satisfied to a legal certainty.

*B. Whether Plaintiffs' Breach of Contract Claim Should be Dismissed*

In Texas, "[i]t is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach."[50] Plaintiffs' Second Petition concedes they "missed several payments" on Bank of America's loan.[51] This demonstrates Plaintiffs have defaulted on their loan agreement, and Plaintiffs have not provided any basis to excuse their default. Given this clearly established rule, Plaintiffs cannot pursue their breach of contract claim. Accordingly, this claim should be dismissed for failure to state a claim.

Although a Rule 12(b)(6) dismissal is usually without prejudice to refile, some situations call for

---

[47] *McDonal*, 408 F.3d at 183.

[48] 2015 Notice Removal, Ex. C-1, "Property Search Results," at 2, ECF No. 1-1. Plaintiffs provide a slightly higher estimate, as they claim the property is "conservatively valued" at $315,000.00. Pls.' Second Pet. 2.

[49] *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

[50] *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (per curiam) (internal quotation marks and citations omitted).

[51] Pls.' Second Pet. 3.

finality. "At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."[52]

Plaintiffs assert they should have an opportunity to file a motion to remand this case to state court. As potential obstacles to diversity jurisdiction have already been analyzed, and Plaintiffs have not provided any potential grounds for remand, this opportunity is not warranted.

Alternatively, Plaintiffs argue they should be provided an opportunity to file an amended complaint before having their claim dismissed. When an opponent has recently filed a motion to dismiss under Rule 12(b), leave to amend generally should be given freely.[53] However, certain considerations, including "repeated failure to cure deficiencies by amendments previously allowed" and "futility of the amendment," may weigh against granting leave to amend.[54]

Before commencing this cause of action, Plaintiffs asserted their breach of contract claim in multiple pleadings.[55] Those pleadings admitted Plaintiffs had missed payments and thereby defaulted on their loan.[56] Bank of America pointed out the defect several times before filing the instant Motion.[57] Crucially, Plaintiffs' Response concedes they remain in default on the loan.[58] As Plaintiffs have

---

[52] *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

[53] *See* Fed. R. Civ. P. 15(a)(1)(B) (allowing pleadings to be amended once as a matter of course within "21 days after service of a motion under Rule 12(b)"); *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982) ("Rule 15(a) evinces a bias in favor of granting leave to amend.").

[54] *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[55] Pls.' First Pet. 3; Pls.' First Am. Compl. 4 ¶¶ 33–34; Pls.' Second Am. Compl. 4 ¶¶ 34–35.

[56] Pls.' First Pet. 3; Pls.' First Am. Compl. 3 ¶ 17; Pls.' Second Am. Compl. 3 ¶ 17.

[57] *Wicker, Jr. v. Bank of America, N.A.*, No. 3:14-cv-00091-PRM (W.D. Tex. May 30, 2014), "Defendant's Motion to Dismiss Pursuant [sic] Federal Rule of Civil Procedure 12(b)(6)," at 4 ¶ 9, ECF No. 18; *Wicker, Jr. v. Bank of America, N.A.*, No. 3:14-cv-00091-PRM (W.D. Tex. June 20, 2014), "Defendant's Second Motion to Dismiss Pursuant [sic] Federal Rule of Civil Procedure 12(b)(6)," at 5 ¶ 12, ECF No. 24.

[58] *See* Pls.' Resp. 2 ¶ 4 ("Plaintiffs have twice offered to get the mortgage completely current . . . .").

repeatedly failed to excuse that default, there is no reason to presume they ever will do so. In the interest of finality and in light of multiple prior opportunities to correct that defect, the court will dismiss Plaintiffs' claim with prejudice.

*C. Dismissing Mitrisin and Nations as Defendants*

Plaintiffs have not filed any claims against either Mitrisin or Nations, and the dismissal of Plaintiffs' breach of contract claim fully resolves this case. Accordingly, Mitrisin and Nations should be dismissed as defendants to this cause of action.

## IV. CONCLUSION

Bank of America's "Defendant's Motion to Dismiss Pursuant [sic] Federal Rule of Civil Procedure 12(b)(6)" [ECF No. 4] is **GRANTED**:

1. Plaintiffs Thomas George Wicker, Jr. and Rocio Padilla Wicker's claim for breach of contract is **DISMISSED WITH PREJUDICE**;
2. Beverly Mitrisin and Charles Thomas Nations are **DISMISSED** as defendants to this cause of action; and
3. The Clerk of the Court is instructed to **CLOSE** this cause.

**SO ORDERED.**

**SIGNED** this **13th** day of **February**, **2015**.



**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**