FILED

2018 OCT -4 PM 3:45

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY____D2_____
DEPUTY

| | | |
|---|---|---|
| **THOMAS GEORGE WICKER, JR.,** | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| **v.** | § | **EP-17-CV-99-DB** |
| | § | |
| **SETERUS, INC.,** | § | |
| **Defendant/Counter-Plaintiff.** | § | |
| | § | |
| ——————————————— | § | |
| | § | |
| **SETERUS, INC.,** | § | |
| **Third-Party Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ROCIO P. WICKER et al.,** | § | |
| **Third-Party Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant/Counter-Plaintiff and Third-Party Plaintiff Seterus, Inc.'s ("Seterus") "Motion for Final Summary Judgment and Incorporated Brief" ("Motion"), filed in the above-captioned case on January 31, 2018. Therein, Seterus asks the Court to grant summary judgment in its favor against Plaintiff/Counter-Defendant Thomas George Wicker, Jr. ("Mr. Wicker") and Third-Party Defendants, Rocio P. Wicker ("Ms. Wicker"), the United States of America Internal Revenue Service ("IRS"), and Midfirst Bank, a Federally Chartered Savings Association (collectively, "Third-Party Defendants"). On February 12, 2018, Mr. Wicker and Third-Party Defendants filed their "Response to Third-Party Plaintiff's Motion for Summary Judgment" ("Response"). On February 27, 2018, Seterus filed its "Reply in Support of their Motion for Summary Judgment" ("Reply"). After due consideration, the Court is of the opinion that Seterus's Motion should be granted.

# BACKGROUND

This suit arises from a fifteen-year promissory Note ("the Note") for $221,000.00 secured by Mr. Wicker and Ms. Wicker's (collectively, "the Wickers") home, which is located at 6533 Calle Bonita Lane in El Paso, Texas ("Calle Bonita Property") on April 29, 2004. Pl.'s Orig. Pet. & App. for Temp. Restraining Order ("Complaint") at 2, ECF No. 1, Ex. B–1; Mot. at 3, ECF No. 28, Ex. A–1. Concurrently with the Wickers' execution of the Note, they executed a Deed of Trust securing the repayment of the Note with the Calle Bonita Property. Mot. at 3, ECF No. 28, Ex. A–2 (The Note and Deed of Trust shall collectively be referred to as the "loan agreement."). Fannie Mae is the current legal owner of the Note and mortgagee of the Deed of Trust. *Id.* at 4, Ex. A. Seterus is the current servicer of the loan agreement and holder of the Note on behalf of Fannie Mae. *Id.*

The instant case is the fourth case that Mr. Wicker has filed relating to the attempted foreclosure of the Calle Bonita Property in connection with this same loan agreement. *See Wicker v. Bank of Am., N.A.* ("*Wicker I*"), No. EP-14-CV-91-PRM, 2014 U.S. Dist. LEXIS 184476 (W.D. Tex. Aug. 27, 2014); *Wicker v. Bank of Am., N.A.* ("*Wicker II*"), No. EP-15-CV-00015-FM, 2015 WL 632096 (W.D. Tex. Feb. 13, 2015); *Wicker v. Seterus, Inc., et al.* ("*Wicker III*"), No. EP-15-CV-331-KC, 2016 U.S. Dist. LEXIS 59696 (W.D. Tex. May 5, 2016).[1]

---

1 Generally, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). However, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record," *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citations omitted), including court documents from prior related proceedings. *Price v. U.S. Bank, N.A.*, No. 3:14-CV-35 54-N-BK, 2015 WL 1505695, at *2 (N.D. Tex. Mar. 30, 2015) ("The Court may take notice of the judicial record in prior related proceedings."). Because the opinions and records in the prior cases are matters of public record, the Court may consider these documents in deciding the 12(b)(6) motion. *See Cinel*, 15 F.3d at 134 n.6; *Price*, 2015 WL 1505695, at *2.

Sometime in late 2013, Mr. Wicker missed several payments on the loan agreement. Compl. at 2, ECF No. 1, Ex. B–1. Mr. Wicker alleges that Bank of America, the loan servicer at the time, "then miscalculated the amount due on the mortgage attempting to force Plaintiff to pay significantly more than was owed." *Id.* Mr. Wicker claims that "Bank of America also miscalculated the amount allegedly due on escrow," and that, in doing so, Bank of America was "attempting to force Plaintiff to pay far more than [was] owed." *Id.*

On February 28, 2014, the Wickers filed a lawsuit in the 243rd District Court of El Paso County, Texas—*Wicker I*—in anticipation of the foreclosure of the Calle Bonita Property as a result of Mr. Wicker's missed payments. *See Wicker I*, 2014 U.S. Dist. LEXIS 184476, at *1. The Wickers named Bank of America as a defendant in *Wicker I*, and Bank of America subsequently removed the case to federal court. *Id.* In the *Wicker I* lawsuit, the Wickers alleged that Bank of America "breached the contract 'by improperly calculating the amount due on the Note, improperly imposing and calculating escrow, improperly accelerating the Loan, and improperly posting the home for foreclosure based upon incorrect amounts due.'" *Id.* at *2.

The Wickers also brought a Real Estate Settlement Procedures Act ("RESPA") claim, alleging that Bank of America "collect[ed] or attempt[ed] to collect escrow amounts far in excess of those permitted by the law," and a Texas Deceptive Trade Practices Consumer Protection Act ("DTPA") claim, alleging that Bank of America "represent[ed] that the mortgage services had characteristics, uses or benefits that they did not." *Id.* at *4 (quoting *Wicker I* Compl. at 4–5). On August 27, 2014, another judge of this Court dismissed the Wicker's claims for failure to state a claim upon which relief could be granted. *Id.* at *12. The court

dismissed the breach of contract and DTPA claims without prejudice and the RESPA claim with prejudice. *Id.* at *13.

According to Mr. Wicker's Complaint in the instant case, in August of 2014—around the time that the federal district court dismissed the claims in *Wicker I*—the parties came to an agreement in which Mr. Wicker would pay "the amounts past due for the mortgage and the past taxes." Compl. at 2, ECF No. 1, Ex. B–1. However, despite this agreement, there was still a "'dispute' [regarding] the amount of the attorney's fees and whether Bank of America was permitted to impose force placed escrow." Compl. 2–3, ECF No. 1, Ex. B–1.

On December 30, 2014, the Wickers again filed a lawsuit—*Wicker II*—in the 243rd District Court of El Paso County, Texas, in anticipation of the foreclosure of the Calle Bonita Property in which they "assert[ed] a breach of contract claim and request[ed] a temporary restraining order against Bank of America." *See Wicker II*, No. EP-15-CV-000 15-FM, 2015 WL 632096, at *1. In addition to naming Bank of America as a defendant, the Wickers also named Beverly Mitrisin ("Ms. Mitrisin") and Charles Thomas Nations ("Mr. Nations") as defendants. *Id.* As in *Wicker I*, Bank of America removed the case to federal court. *See id.* at *2.

On February 13, 2015, the *Wicker II* court found that it had diversity jurisdiction over the case, despite the fact that Mr. Wicker, Ms. Wicker, Ms. Mitrisin, and Mr. Nations were all Texas citizens and despite Mr. Wicker's allegation that the amount in controversy was under $75,000.00. *See id.* at *3. The *Wicker II* court held that Mitrisin and Nations were "wrongfully joined" because the Wickers "failed to state any claims against Mitrisin and Nations," and because Mitrisin and Nations were "not parties necessary to provide [Mr. Wicker

4

and Ms. Wicker] with any relief." *Id.* The *Wicker II* court further held that, "[b]ecause Plaintiffs are seeking to prevent foreclosure on the [Calle Bonita] Property, the amount in controversy [wa]s equal to the [Calle Bonita] Property's value," and thus the amount in controversy exceeded $75,000.00. *Id.* Accordingly, the *Wicker II* court found that it had diversity jurisdiction over the suit between the Wickers, Texas citizens, and Bank of America, a non-Texas citizen. *Id.* Ultimately the court dismissed the Wickers' claims for failure to state a claim pursuant to Rule 12(b)(6), explaining that Mr. Wicker and Ms. Wicker could not maintain a breach of contract claim when they had defaulted on the loan agreement. *Id.*

In dismissing the Wickers' claims, the Court noted that:

> Although a Rule 12(b)(6) dismissal is usually without prejudice to refile, some situations call for finality. "At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."

*Id.* (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).

The *Wicker II* court found that a dismissal with prejudice was particularly appropriate under the facts of the case, because, "[b]efore commencing this cause of action, Plaintiffs asserted their breach of contract claim in multiple pleadings." *Id.* at *4. Thus, "[i]n the interest of finality and in light of multiple prior opportunities to correct the defect [in their pleadings]," the court dismissed Mr. Wicker and Ms. Wicker's claims with prejudice. *Id.*

According to Mr. Wicker, Bank of America never fulfilled its promise, made on March 19, 2015, to furnish a number for the attorney's fees. Compl. at 2–3, ECF No. 1, Ex. B–1. At the time of both prior lawsuits, the loan was serviced by Bank of America. *See Wicker II*, No. EP-15-CV-00015-FM, 2015 WL 632096, at *1. However, in April of 2015, Bank of America transferred the mortgage to Seterus—Defendant in *Wicker III* and the instant case. Compl. at 1, ECF No. 1, Ex. B–1; *Wicker III*, No. EP-15-CV-331-KC, 2016 U.S. Dist. LEXIS

59696, at *7.    Mr. Wicker asserts that, on May 22, 2015, "[he] wrote Seterus a letter reiterating Plaintiff's agreement to pay the past due amounts in full[,] . . . question[ing] two charges[,] and request[ing] clarification of these charges."    *Wicker III*, No. EP-15-CV-331-KC, 2016 U.S. Dist. LEXIS 59696, at *7.    Mr. Wicker states that "Seterus twice informed Plaintiff that it needed additional time to respond."    *Id.*

On August 21, 2015, "Plaintiff sent a follow up letter to Seterus and its attorneys," in which "Plaintiff tendered Seterus $67,909.30" in order to "bring the note current and reimburse Seterus for the past real estate taxes."    *Id.*    Mr. Wicker "also offered to pay $4,000 for attorneys' fees," but that he "indicat[ed to Seterus] that amounts in excess were neither reasonable nor necessary given Plaintiff's agreement to get current at least as early as August of 2014."    *Id.*    In the letter, Mr. Wicker "agreed to go to binding arbitration for the remaining amount of the claimed attorneys' fees."    *Id.*    According to Mr. Wicker, Seterus never responded to this letter.    *Id.* at *8.    Ultimately, according to Mr. Wicker, Seterus "accelerate[d] the mortgage and post[ed] the property for foreclosure," although Mr. Wicker does not indicate when this occurred.    *See id.*

Mr. Wicker brought *Wicker III* against Seterus on October 27, 2015, in the 327th District Court of El Paso County, Texas, and Seterus removed the case to federal court on November 12, 2015.    *Id.*    On December 3, 2015, Seterus filed a 12(b)(6) Motion, asking the Court to dismiss all claims against it as barred by res judicata or collateral estoppel, and because Mr. Wicker "failed to state a claim upon which relief may be granted."    *Id.*

The *Wicker III* court granted the motion to dismiss.    First, the Court found that "Seterus [wa]s in privity with Bank of America because Seterus was the successor in interest to Bank of America's interest in the Calle Bonita Property."    *Id.* at *15 (citing *Meza v. Gen.*

6

*Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990) ("[P]rivity exists . . . where the non-party is the successor in interest to a party's interest in property.")). And because the district court in *Wicker II* had diversity jurisdiction, the prior judgment—the dismissal of Mr. Wicker's claims with prejudice—was rendered in a court of competent jurisdiction. *Id.* at *16 (citing *Torello v. Mortg. Elec. Registration Sys., Inc.,* 2013 U.S. Dist. LEXIS 91350, No. 12-CV-3726-O-BH, at *6 (holding that the prior judgment was rendered in a court of competent jurisdiction where the court rendering the prior judgment had jurisdiction because "defendants properly removed [the prior] action to [federal court] based on diversity jurisdiction.")). Accordingly, the second element of res judicata was satisfied. *Id.* at *17. Third, the *Wicker II* court's 12(b)(6) dismissal with prejudice was a final judgment on the merits. *Id.* at *18.

Finally, the fourth and final element of res judicata was met because the *Wicker III* suit was based on the same nucleus of operative facts as *Wicker II*. *Id.* at *20. Specifically, Mr. Wicker's claim for breach of contract was based on the same loan agreement and the same alleged miscalculation as the breach of contract claim in *Wicker II*. *Id.* at *22. Indeed, the two suits involved identical operative facts, so the final element of res judicata was met. *Id.* at *21.

Despite Mr. Wicker's arguments, the Court did not find that the issue of attorney's fees distinguished *Wicker II* from *III*. *Id.* at *22–23. Under the transactional test, the issue of attorney's fees was considered part of the same claim or cause of action as at issue in *Wicker II* because the same loan agreement and breach were involved, despite the fact that neither party chose to raise the issue of attorney's fees in *Wicker II*. *Id.* at *24–25 (citing *In re Paige,* 610 F.3d 865, 872 (5th Cir. 2010).

After finding that all four elements of res judicata were met, the *Wicker III* Court further reasoned that because Mr. Wicker was aware of a dispute regarding attorney's fees

during the *Wicker II* litigation, Mr. Wicker could have brought this claim to the *Wicker II* Court. *Id*. at *27. Therefore, the Court held that *Wicker III* was barred by res judicata. *Id*. at *28. Furthermore, the Court refused to grant Mr. Wicker leave to amend the Complaint because leave to amend would be futile as the claims were barred by res judicata. *Id*. at * 29 (citing *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) and *Donnelly v. JPMorgan Chase Bank, N.A.*, No. CIV.A. H-15-1671, 2015 U.S. Dist. LEXIS 148656, at *1 (S.D. Tex. Nov. 3, 2015) (finding that amendment would be futile where "new claims are based on the same nucleus of operative facts as the earlier case . . . and would thus be barred by res judicata")).

Now, in what is *Wicker IV*, Mr. Wicker alleges identical claims, *see supra* 2–4, but also alleges that Seterus failed to follow the conditions precedent in the Deed of Trust in accelerating the mortgage and posting the Calle Bonita Property for foreclosure. Compl. at 3, ECF No. 1, Ex. B–1. Specifically, he alleges that the Deed of Trust required a thirty-day notice prior to foreclosure and that Seterus failed to give this notice in breach of the Deed of Trust contract. *Id*. at 4. In Mr. Wicker's "Third-Party Defendant's Answer" filed on May 10, 2017 and in his "Counter-Defendant's Answer" filed on May 12, 2017, he asserted as an affirmative defense that the "Deed of Trust and Texas law require that [he] be furnished twenty-one days' notice." Third-Party Def.'s Ans. at 4, ECF No. 17; Counter-Def.'s Ans. at 4, ECF No. 18. And in these filings, Mr. Wicker also admitted that Seterus gave him a number for the "cure," but "refuse[d] to tell [him] what the remaining principal balance of the Note [would] be or what the monthly payment [would] be." *Id*.

Seterus asks for summary judgment dismissing Mr. Wicker's claims as barred by res judicata and for summary judgment in its favor on its counterclaim for breach of contract and an order for foreclosure and attorney's fees. Mot. at 5, ECF No. 28. In its Counterclaim,

Seterus asserts that after the Wickers failed to make their payments, a Notice of Default and Intent to Accelerate ("Notice of Default") was provided to the Wickers on October 16, 2013. Def.'s Orig. Countercl. and Third-Party Compl. at 4, ECF No. 3; Mot. at 15, ECF No. 28, Ex. A–5. In the Notice of Default, they were advised that the loan was in default and that they needed to tender $3,568.28 by November 25, 2013 to become current on the loan. Mot. at 15, ECF No. 28, Ex. A–5. Mr. Wicker and Ms. Wicker were also informed in the Notice of Default that their failure to timely bring the loan current would result in an acceleration of the debt. *Id.* According to Seterus, no payments were made to cure the default or reinstate the loan and the loan remains in default. *Id.*at Ex. A–7. Mr. Wicker claims that on August 21, 2015 he tendered Seterus $67,909.30 to bring the Note current and reimburse the past real estate taxes. *Supra* at 6; Pl's Orig. Pet.

On August 12, 2016, Fannie Mae, through its attorneys, Mackie Wolf Zientz & Mann, P.C., sent via United States certified and regular mail to Mr. Wicker and Ms. Wicker at the Calle Bonita Property, Notice of Acceleration of Loan Maturity indicating that Loan had been accelerated. Mot. at 15, ECF No. 28, Ex. A–6. Since that date, interest and other charges continued to accrue while the loan was in default. *Id.* at Ex. A–6 and A–7. On September 12, 2016, Mr. Wicker sent Seterus's attorney an email indicating: "My offer is to pay $32,000 on the 20th of September, 20th October [sic], and 20th of November. I think this brings everything current, but I need confirmation from Seterus that this brings everything current, **what the remaining balance on the mortgage will be, and what the monthly payment will be** [sic]." Resp. at 3, ECF No. 29, Ex. 1 (emphasis original). Allegedly, the Wickers did not get a confirmation, and continued to email and request reinstatement and confirmation of the remaining

balance and monthly payments on April 19, 2017; September 8, 2017; February 2, 2018—all without response.

According to Seterus, the Wickers did not cure the default and, as a result, the debt was accelerated and all amounts owed on the loan were currently due and payable at that time. Def.'s Orig. Countercl. and Third-Party Compl. at 4, ECF No. 3. Pursuant to the Deed of Trust, Defendant may foreclose on the Calle Bonita Property in the event there is a default in the payment obligations on the Note. Mot. at 15, ECF No. 28, Ex. A–2 at ¶22. Thus, Seterus argues it is entitled to a judgment allowing it to proceed with foreclosure in accordance with the Deed of Trust and Texas Property Code section 51.002. *See id.*; Tex. Prop. Code § 51.002. Seterus also argues that it is entitled to recover its reasonable attorney's fees incurred in prosecuting its claim for foreclosure. *Id.* at Ex. A–1 at ¶6(E).

Seterus further alleges in its Motion that Third-Party Defendants, Midfirst Bank and the IRS, are necessary parties because of their respective junior lien interests in the Calle Bonita Property, and Seterus seeks judgment against them *in rem* only to create a foreclosure sale. Mot. at 16, ECF No. 28, Exs. A–2, C and D. The recorded security instruments for both MidFirst Bank and the IRS were recorded in the real property records of El Paso County, Texas after Fannie Mae's security instrument was recorded. *Id.* at Exs. A–2, C, and D.

In his Response to Seterus's Motion, Mr. Wicker highlights that "Seterus is not entitled to Summary Judgment until it complies with the condition precedent in the Deed of Trust . . . [s]pecifically, Seterus should be required to furnish the Wickers a reinstatement amount . . . [and] the amount of the loan balance reduction and the future payments as has been repeatedly requested." Resp. at 5, ECF No. 29. Again, Mr. Wicker seeks a temporary

restraining order, as well as temporary and permanent injunctive orders, enjoining the foreclosure on the Calle Bonita Property.   Compl. at 8, ECF No. 1, Ex. B–1.

## SUMMARY JUDGMENT STANDARDS

The first relevant summary judgment standard regards a motion to dismiss pursuant to Rule 12(b)(6) that challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.   Fed. R. Civ. P. 12(b)(6).   In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff.   *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).   Though a complaint need not contain "detailed factual allegations," a plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 and 570 (2007); *see also Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555; *see also Colony Ins. Co.*, 647 F.3d at 252. Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level."   *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Colony Ins. Co.*, 647 F.3d at 252 ("Factual allegations must be sufficient to raise a non-speculative right to relief.").   Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very

remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

  The second relevant standard is Federal Rule of Civil Procedure 56(c). Under this rule, summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" only if it would permit "a reasonable jury . . . [to] return a verdict for the nonmoving party" and "might affect the outcome of the suit." *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 458–59 (5th Cir. 1995), *aff'd en banc*, 79 F.3d 1415 (5th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

  The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (non-movant cannot defeat a motion for summary judgment with "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla" of evidence). On summary judgment, the district court must view the evidence and the inferences in the light most favorable to the non-movant.[2] *FDIC v. Dawson*, 4 F.3d 1303, 1306 (5th Cir. 1993).

---

[2] Plaintiff, a licensed attorney, is representing himself in this case. *See* Compl. at 6, ECF No. 1, Ex. B–1. Although generally courts must construe pro se pleadings liberally and hold them "to less stringent standards than formal pleadings drafted by lawyers," *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), a number of courts have declined to construe pro se pleadings more liberally when the pro se litigant is an attorney. *See U.S. ex rel. Holmes v. Northrop Grumman Corp.*, No. 15-60414, 642 Fed. Appx. 373, 2016 U.S. App. LEXIS 5370, at *4 (5th Cir. 2016); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001); *Powell v. Galveston Indep. Sch. Dist.*, No. CIV.A. G-06-415, 2006 U.S. Dist. LEXIS 57514, at *1 n.3 (S.D. Tex. Aug. 1, 2006). Likewise, the Court declines to construe the pleadings liberally in this case where the Plaintiff, though representing himself, is a licensed attorney.

**ANALYSIS**

Res judicata applies here and all four elements of res judicata are satisfied in this case.   First, Seterus is in privity with the prior defendant, Bank of America.   Second, the district courts that decided *Wicker II* and *III* were courts of competent jurisdiction.   Third, those courts' dismissals were final judgments on the merits.   Fourth, the claims in *Wicker III* were the same claims raised in the instant case.   Finally, Mr. Wicker's "new" claim, regarding the alleged noncompliance with conditions precedent to foreclosure should and could have been raised in the prior actions and therefore is also barred by res judicata.

Seterus's counterclaim for breach of contract is entitled to judgment as a matter of law because there is no genuine issue of material fact.   Mr. Wicker has attempted to raise a doubt about whether Seterus performed the conditions precedent to foreclosure, but his attempt does not create a material issue of genuine fact.   Therefore, summary judgment shall be granted in Seterus's favor on its counterclaim for breach of contract and an order for foreclosure and attorney's fees shall issue.

1. **Seterus Is Entitled to Summary Judgment Because Mr. Wicker's Breach of Contract Claim Is Barred by The Doctrine of Res Judicata.**

Res judicata is applicable at the pleading stage of this case.   All four elements of res judicata have been met, and the "new" claim regarding conditions precedent to foreclosure should have been raised in the prior actions.   Furthermore, Mr. Wicker is denied leave to amend as it would be futile because his claim is barred by res judicata.

   a. **While Usually Inappropriate in a Motion to Dismiss, Dismissal on Res Judicata Grounds Is Appropriate Here.**

Before turning to the substance of Defendant's Motion, the Court first considers the propriety of raising a res judicata argument in a motion to dismiss.   Although "generally a res

13

judicata contention cannot be brought in a motion to dismiss" because it "must be pleaded as an affirmative defense," *see Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005), "[d]ismissal under Rule 12(b)(6) on *res judicata* grounds may be appropriate when the elements of *res judicata* are apparent on the face of the pleadings." *Dean v. Miss. Bd. of Bar Admissions*, 394 F. App'x 172, 175 (5th Cir. 2010); *see also Meyers v. Textron, Inc.*, 540 F. App'x 408, 410 (5th Cir. 2013) ("[R]es judicata may be properly raised on a motion to dismiss when 'the facts are admitted or not controverted or are conclusively established.'" (quoting *Clifton v. Warnaco, Inc.*, 53 F.3d 1280, 1995 WL 295863, at *6 n.13 (5th Cir. 1995))). In addition, dismissal under Rule 12(b)(6) is proper if the elements of res judicata are apparent "based on the facts pleaded and judicially noticed." *See Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) ("If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper.").

In this case, as set out below, the Court resolves the issue of res judicata by relying only on the facts pleaded in Plaintiff's Complaint and the judicially noticed records in the prior lawsuits. Therefore, because the elements of res judicata are apparent "based on the facts pleaded and judicially noticed," the Court finds that it is appropriate to review Seterus's res judicata defense in the context of the Motion to Dismiss. *See Hall*, 305 F. App'x at 229 ("Because [plaintiff's] own pleadings and the judicially noticed, publicly available documents all reveal that res judicata's four requirements are satisfied, the district court properly granted defendants' Rule 12(b)(6) motion to dismiss.").

Moreover, in *Test Masters*, 428 F.3d 559, the Fifth Circuit reviewed the district court's dismissal of the plaintiff's claims under the 12(b)(6) standard because the plaintiff "did not challenge [the defendant's] ability to argue res judicata in a motion to dismiss rather than in [its]

response or a motion for summary judgment." *Id.* at 570 n.2. Likewise, in this case Mr. Wicker has not challenged Seterus's ability to argue res judicata in a motion to dismiss. *See generally* Resp., ECF No. 29.

### b. Res Judicata Bars Mr. Wicker's Claims.

Res judicata is an affirmative defense based on the principle "that controversies once decided shall remain in repose." *See Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013) (quoting *Iselin v. Meng*, 307 F.2d 455, 457 (5th Cir. 1962)); *Test Masters*, 428 F.3d at 570 n.2. Res judicata "does not depend upon whether or not the prior judgment was right." *See Comer*, 718 F.3d at 466 (quoting *Iselin*, 307 F.2d at 457). The "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer*, 718 F.3d at 466 (quoting *Test Masters*, 428 F.3d at 571). "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000).

Under federal law, true res judicata—also referred to as claim preclusion—"has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Comer*, 718 F.3d at 467 (quoting *Test Masters*, 428 F.3d at 571).

If all four elements are met, the court must then determine if "the previously unlitigated claims could or should have been asserted in the prior proceeding." *In re Paige*, 610 F.3d at 870 (quoting *D-1 Enters., Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir. 1989)). Because res judicata is an affirmative defense, the defendant bears the burden of proving this

defense. *See Taylor*, 553 U.S. at 907; *Torello*, 2013 U.S. Dist. LEXIS 91350, at *5 ("[T]he burden of proving claim preclusion 'rests on the party claiming the benefit of the doctrine.'").

### i. Seterus and Bank of America Are in Privity.

Although Seterus was not a party to *Wicker I* or *II*, Seterus nonetheless contends that the first element of res judicata—privity—is met because Bank of America was a party to *Wicker I* and *II* and because Seterus "succeeded Bank of America in the servicing of his loan" and was deemed a party in *Wicker III*. *See* Mot. at 8, ECF No. 28; *Wicker III*, No. EP-15-CV-33 1-KC, 2016 U.S. Dist. LEXIS 59696, at *14–15. Mr. Wicker does not address the element of privity in his Response. *See generally* Resp., ECF No. 29.

"A non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant." *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992); *Torello*, 2013 U.S. Dist. LEXIS 91350, at *6. "[P]rivity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Meza*, 908 F.2d at 1266.

Specifically, "privity exists between preceding and succeeding owners of property," and "assignees and servicing agents of a loan are in privity with an original mortgage company." *See Ernest v. CitiMortgage, Inc.*, No. SA:13-CV-802-DAE, 2014 U.S. Dist. LEXIS 8559, at *4 (W.D. Tex. Jan. 22, 2014); *see also Taylor*, 553 U.S. at 894 (explaining that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment," including "preceding and succeeding owners of property"); *see also Meza*, 908 F.2d at 1266 ("[P]rivity exists . . . where the non-party is the successor in interest to a party's interest in property."); *Ernest*, 2014 U.S. Dist. LEXIS 8559, at

*4; *McMahan v. First Union Nat'l Bank*, No. C.A.SA-01-0782 FB NN, 2003 U.S. Dist. LEXIS 4305, at *1–2 (W.D. Tex. Mar. 7, 2003), report and recommendation adopted sub nom. *McMahan v. First Union Nat'l Bank*, No. CIV.A. SA-01-CA782FB, 2003 U.S. Dist. LEXIS 4305 (W.D. Tex. June 10, 2003) (finding, in a case involving the validity of a mortgage loan, that the original lender and the bank "to whom the mortgage loan was later assigned" were "clearly in privity").

The Court finds that Seterus is in privity with Bank of America. In the Complaint, Mr. Wicker admits that "[i]n April of 2015, Bank of America transferred the mortgage to Seterus," and that, shortly after this transfer, he contacted Seterus regarding repayment of "the past due amounts" on the mortgage. *See* Compl. at 3, ECF No. 1, Ex. B–1. Thus, under the facts Mr. Wicker asserts, Seterus is in privity with Bank of America because Seterus was the successor in interest to Bank of America's interest in the Calle Bonita Property. Accordingly, because privity exists between Bank of America and Seterus, the first element of res judicata is satisfied. *See McMahan*, No. CIV.A. SA-01-CA782FB, 2003 U.S. Dist. LEXIS 4305, at *1–2.

### ii. The District Court in *Wicker II* and *III* Were Courts of Competent Jurisdiction.

In *Wicker III*, United States District Judge Kathleen Cardone ("Judge Cardone") in the United States District Court for the Western District of Texas, El Paso Division acknowledged and referenced that the *Wicker II* district court had diversity jurisdiction in *Wicker II* because the plaintiffs were both Texas citizens, the remaining defendant—Bank of America—was a non-Texas citizen, and the amount in controversy was over $75,000.00. *Wicker III*, No. EP-15-CV-331-KC, U.S. Dist. LEXIS 59696, at *5–6; *Wicker II*, No. EP-15-CV-00015-FM, 2015 U.S. Dist. LEXIS 17654, at *3; *see also* 28 U.S.C. § 1332(a)–(b). A prior judgment is rendered in a court of competent jurisdiction where the court rendering the prior judgment had jurisdiction

because "defendants properly removed [the prior] action to [federal court] based on diversity jurisdiction." *Torello*, 2013 U.S. Dist. LEXIS 91350, at *6.

Because the district court in *Wicker II* had diversity jurisdiction and the case was properly removed from the state court, the judgment—the dismissal of Mr. Wicker's claims with prejudice—was rendered in a court of competent jurisdiction. Furthermore, Judge Cardone's Court was one of competent jurisdiction for the same reasons, so the judgement in *Wicker III* was also rendered in a court of competent jurisdiction.

These United States District Judges have entered orders dismissing Mr. Wicker's actions after careful and thorough consideration of the issues. As with the element of privity, Mr. Wicker does not address whether either judgment was rendered in a court of competent jurisdiction. *See generally* Resp., ECF No. 29. Accordingly, the second element of res judicata is satisfied.

### iii. The *Wicker II* and *III* Courts' Dismissals Were Final Judgments on The Merits.

In *Wicker II* and *III*, the district courts dismissed Mr. Wicker's breach of contract claim for failure to state a claim under Rule 12(b)(6). *Wicker II*, No. EP-15-CV-00015-FM, 2015 U.S. Dist. LEXIS 17654, at *3-4; *Wicker III*, No. EP-15-CV-331-KC, U.S. Dist. LEXIS 59696, at *29. "It is well established that Rule 12(b)(6) dismissals are made on the merits." *Stevens v. Bank of Am., N.A.*, 587 F. App'x 130, 133 (5th Cir. 2014); *see Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981). In addition, "[g]enerally, a federal court's dismissal with prejudice is a final judgment on the merits for res judicata purposes." *Stevens*, 587 F. App'x at 133; *see Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).

As with the prior elements, Mr. Wicker does not address whether a prior court entered a final judgment on the merits. *See generally* Resp., ECF No. 29. Because the *Wicker II*

court's 12(b)(6) dismissal with prejudice and *Wicker III* court's 12(b)(6) dismissal without leave to amend were final judgments on the merits, the third element of res judicata is satisfied.

### iv. Mr. Wicker's Claims Here are the Same as His Claims in *Wicker II* and *III*.

The same common nucleus of facts: a loan agreement, nonpayment, and disputed repayment amount, predominates *Wicker I, II, III*, and now *IV*. To determine whether the suits involve the same claim or cause of action, courts in the Fifth Circuit use the "transactional test." *See In re Paige*, 610 F.3d at 872; *Test Masters*, 428 F.3d at 571. "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Id*; *Id*. "The critical issue under this determination is whether the two actions under consideration are based on 'the same nucleus of operative facts,' rather than the type of relief requested, substantive theories advanced, or types of rights asserted." *In re Paige*, 610 F.3d at 872 (internal citations and quotation marks omitted) (quoting *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000); *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007)). Indeed, "[a] judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." *Hall v. United States*, C.A. No. 6:06-CV-528, 2008 U.S. Dist. LEXIS 6631, 2008 WL 276397, at *5 (E.D. Tex. Jan. 30, 2008).

The fourth element of res judicata is satisfied where, "[i]n both actions, Plaintiffs sought relief from foreclosure proceedings involving the real property," and "[b]oth cases [we]re founded upon Plaintiffs' allegations that the Defendants breached both loan modification agreements." *Davis v. Chase Home Fin., LLC*, No. 3:12-CV-456-HTW- LRA, 2014 U.S. Dist. LEXIS 30567, at *5 (S.D. Miss. Mar. 10, 2014), *aff'd sub nom. Davis v. Chase Home Fin., L.L.C.*, 597 F. App'x 249 (5th Cir. 2015); *see In re Paige*, 610 F.3d at 872. And the fourth element of res

judicata is satisfied where "[b]oth the underlying action and [the prior action we]re based on the same mortgage loan." *Anderson v. Bank of Am.*, No. 09-cv-183-DCB-JMR, 2009 U.S. Dist. LEXIS 104288, at *5 (S. D. Miss., 2009). "Clearly, res judicata prevents" re-litigation of the claims, where "both lawsuits involve the [same] home equity loan agreement." *McMahan*, 2003 U.S. Dist. LEXIS 4305, at *2.

      The Court finds that the fourth and final element of res judicata is met because this suit is based on the same nucleus of operative facts as *Wicker I, II* and *III*. For the sake of time and space, this Court will focus on *Wicker II, III* and the instant case. In all of these cases, Mr. Wicker brought claims based solely on the breach of some aspect of the same loan agreement. *See* Pl.'s Orig. Pet. and App. for Temp. Restraining Order ("*Wicker II* Complaint") at 3, Notice of Removal, *Wicker II*, EP-15-CV-00015-FM (W.D. Tex. Jan. 21, 2015), ECF No. 1-1; *Wicker III*, No. EP-15-CV-331-KC, 2016 U.S. Dist. LEXIS 59696, at *20; Compl. at 2–3, ECF No. 1–1, Ex. B–1.

      In *Wicker II*, the district court dismissed Mr. Wicker's claims stemming from the loan agreement, finding that he had failed to state a claim for breach of contract because "a party to a contract who is himself in default cannot maintain a suit for its breach." *Wicker II*, 2015 U.S. Dist. LEXIS 17654, at *3 (quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (per curiam)). Therefore, because Mr. Wicker was in default on the loan agreement he was prevented from bringing a breach of contract claim regarding this agreement. *See id.*

      Likewise, in *Wicker III*, the operative facts involved the same loan agreement that was at issue in *Wicker II*, as well as Mr. Wicker's default on that loan agreement. *Wicker III*, No. EP-15-CV-331-KC, 2016 U.S. Dist. LEXIS 59696, at *21; *Wicker II*, 2015 U.S. Dist. LEXIS 17654, at *3. Thus, the two cases involved a common nucleus of identical operative facts.

The instant suit involves the same claim or cause of action as *Wicker II* and *III*. Specifically, Mr. Wicker's claim for breach of contract is based on the same loan agreement and the same alleged miscalculation as the breach of contract claims in *Wicker II and III*. Compl. at 2, ECF No. 1, Ex. B–1; *Wicker III*, No. EP-15-CV-331-KC, 2016 U.S. Dist. LEXIS 59696, at *21. Although Mr. Wicker attempts to reframe his claim as a new claim regarding alleged noncompliance with the Deed of Trust's conditions precedent to foreclosure (the thirty days' notice and notification of reinstatement amount), this claim is still based on the same loan agreement and the same breach, as his claim regarding "force placed escrow" in *Wicker II* and his claim for attorney's fees in *Wicker III*. *See* Compl. at 3, ECF No. 1, Ex. B–1; *Wicker III*, No. EP-15-CV-331-KC, 2016 U.S. Dist. LEXIS 59696, at *21.

Finally, Mr. Wicker's request for injunctive relief enjoining foreclosure in this case is also based on the same loan agreement and breach as his request for injunctive relief enjoining foreclosure in *Wicker II*, therefore he is not entitled to any restraining order or injunction because res judicata bars his asserted cause of action. *See id.*; *id.*

### v. Mr. Wicker's Claim Regarding the Alleged Lack of Thirty-Days' Notice and Reinstatement Amount Could and Should Have Been Raised in Prior Actions.

Now that the Court has found that all four elements of res judicata are met, the Court must next determine if "the previously unlitigated claims could or should have been asserted in the prior proceeding." *See In re Paige*, 610 F.3d at 870 (quoting *D-1 Enters., Inc.*, 864 F.2d at 38); *Test Masters*, 428 F.3d at 571 (explaining that "res judicata[ ] bars the litigation of claims that either have been litigated or should have been raised in an earlier suit"). "New claims" brought by the plaintiff that "arise from the same nucleus of operative facts . . . could have, and should have, been asserted in the prior suits." *Warren*, 616 F. App'x at 738. Because "[the] claim was

previously available to [plaintiff],[ ] res judicata applies." *Anderson*, 2009 U.S. Dist. LEXIS 104288, 2009 WL 3647516, at *5.

This "inquiry centers on whether and to what extent Plaintiff had actual or imputed awareness of the now-presented claims . . . and whether Plaintiff could have asserted them in the previous action." *Ernest*, 2014 U.S. Dist. LEXIS 8559, at *3. For example, "[t]he fact that plaintiffs have raised an additional challenge to the loan—that defendants charged excessive closing costs—does not destroy res judicata, where plaintiffs could have raised this challenge in the earlier suit." *McMahan*, 2003 U.S. Dist. LEXIS 4305, at *2.

As explained above, Mr. Wicker has already litigated and lost his breach of contract claim regarding the alleged miscalculation of the amount due on his loan agreement, as well as his claims regarding escrow and attorney's fees. *Wicker II*, No. EP-15-CV-00015-FM, 2015 U.S. Dist. LEXIS 17654, at *4; *Wicker III*, No. EP-15-CV-331-KC, 2016 U.S. Dist. LEXIS 59696, at *29. Further, Mr. Wicker already litigated and was denied his request for a permanent injunction based on these claims. *See Wicker II*, No. EP-15-CV-00015-FM, 2015 U.S. Dist. LEXIS 17654, at *4 (explaining that "the dismissal of Plaintiffs' breach of contract claim fully resolves this case" and ordering the Clerk to close the case). Thus, these claims are patently foreclosed. The only remaining claim that is possibly "unlitigated" is Mr. Wicker's claim regarding the alleged failure of Seterus to comply with the Deed of Trust's conditions precedent to foreclosure.

However, in arguing that the claim regarding conditions precedent to foreclosure should not be barred by res judicata, Mr. Wicker argues that "Seterus currently refuses to provide the Wickers with a reinstatement figure for the loan at issue. This is a condition precedent to any foreclosure. As such, the Court should deny the Motion for Summary Judgment." Resp. at 2, ECF No. 29. Mr. Wicker does not argue that he was unaware of this claim at the time of *Wicker I*,

*II* or *III*, or that he could not have presented this claim in the *Wicker I, II* or *III* litigation. *See generally id.* Indeed, according to official public records of El Paso County, Texas, Document No. 20040044193, this Deed of Trust was executed concurrently with the Note on April 29, 2004. *See* Def.'s Orig. Countercl. and Third-Party Compl. at 3, ECF No. 3. Therefore, Mr. Wicker is imputed with awareness of the alleged issue with the Deed of Trust's conditions precedent prior to the commencement of *Wicker I, II* and *III*.

Because Mr. Wicker was aware of a dispute regarding the conditions precedent to foreclosure prior to all of his litigation regarding the Calle Bonita Property, he could have brought this claim to either the *Wicker I, II* or *III* court. And, because the instant dispute arises from the same breach of the same loan agreement as the one at issue in the *Wicker I, II* and *III* litigation, res judicata bars the claim in the instant case.

All four elements of res judicata are met and Mr. Wicker could have brought his claim regarding condition precedent compliance in the prior litigation. Thus, his claims for breach of contract as a result of the alleged noncompliance with the conditions precedent in the Deed of Trust, as well as his request for injunctive relief, are barred by res judicata.

### vi. Mr. Wicker is denied leave to amend.

Although Mr. Wicker has not requested leave to amend his Complaint, the Court considers whether to grant such leave, because generally, when a court dismisses one or more of a plaintiff's claims pursuant to Rule 12(b)(6), the court should give the plaintiff an opportunity to amend the complaint. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). However, "a district court may refuse leave to amend if the filing of the amended complaint would be futile, i.e., 'if the complaint as amended would be subject to dismissal.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir.

2009)).    Specifically, "[c]laims barred by res judicata are futile."    *See Green v. Buckley Madole*,

P.C., No. 3:14-CV-3742-N-BN, 2015 U.S. Dist. LEXIS 40500, 2015 WL 1505703, at *4 (N.D.

Tex. Mar. 30, 2015); *see also Donnelly v. JPMorgan Chase Bank*, N.A., No. CIV.A. H-15-1671,

2015 U.S. Dist. LEXIS 148656, 2015 WL 6701922, at *1 (S.D. Tex. Nov. 3, 2015) (finding that

amendment would be futile where "new claims are based on the same nucleus of operative facts as

the earlier case . . . and would thus be barred by res judicata").

      Because Mr. Wicker's claims are barred by res judicata, the Court agrees with

Judge Cardone's refusal to give leave to amend in *Wicker III* because it would be futile.    *Supra* 8.

Accordingly, the Court declines to grant Mr. Wicker leave to amend the Complaint.

### 2.  Seterus Is Entitled to Summary Judgment as a Matter of Law on its Counterclaim for Breach of Contract Because There is No Genuine Issue of Material Fact.

      Summary judgment on Seterus's counterclaim for breach of contract is proper and

an order for foreclosure shall issue in accordance with the loan agreement because the pleadings,

answers to interrogatories, and admissions on file show that there is no genuine issue of material

fact, so Seterus, the moving party is entitled to judgment as a matter of law.    Mr. Wicker has

only alleged conclusory allegations and unsubstantiated assertions: Seterus did not comply with

conditions precedent in the Deed of Trust and therefore cannot foreclose.    However, none of his

assertions rise to, nor above, a mere "scintilla" of evidence.    Even viewing the evidence and the

inferences in the light most favorable to Mr. Wicker, the non-movant, there is no "material" fact

in dispute that would permit a reasonable jury to return a verdict for him.

### a.  The Loan Agreement is a Valid and Enforceable Contract that Mr. Wicker Breached to the Detriment of Seterus.

      As a matter of law, Mr. Wicker breached the loan agreement and he admits this in

multiple filings.    Because federal jurisdiction is premised on diversity, the Court must apply the

substantive law of Texas. *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1037 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). The elements of a breach of contract claim in Texas are: (1) there is a valid and enforceable contract; (2) the plaintiff performed, tendered performance or was excused from performing; (3) the defendant breached the contract; and (4) the defendant's breach caused the plaintiff's injury. *USAA Tex. Lyods Co. v. Menchaca*, 545 S.W.3d 479, 501 n. 21 (Tex. 2018). Each element, and Seterus's conclusive proof of each, is discussed below.

First, Seterus must show the following in order to prove existence of a valid and enforceable contract between the parties: (1) offer; (2) acceptance; (3) mutual assent; (4) execution and delivery of the contract with the intent that it be mutual and binding; and (5) consideration supporting the contract. *Texas Gas & Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970).

In this case, the loan agreement is a written contract between the parties offering a loan; it was signed and accepted by Mr. Wicker and Ms. Wicker. Mot. at 2, ECF 28, Ex. A–1. The written Note evidences the parties' mutual assent. *See id.* Further, the signatures of the Wickers show that the Note was in fact executed at closing. *See id.* Under the terms of the Note, Plaintiff promised to make monthly payments as consideration. *Id.* Mr. Wicker does not raise any issue with the contract formation in any of his *Wicker I, II, III,* or *IV* pleadings nor in his Response to Seterus's instant Motion. *See supra* 2–10; *see generally* Resp., ECF No. 29. As a matter of law, a valid and enforceable contract exists.

The second element of Seterus's breach of contract claim will be discussed next in Section 'b.' The third and fourth elements of Seterus's breach of contract counterclaim have also been established as a matter of law: Mr. Wicker breached the contract and this breach

caused Seterus injury.    Mr. Wicker does not raise any material doubt about these elements,

admitting in his complaint that he missed several payments beginning in late 2013.    *See*

*generally* Resp., ECF No. 29.    Mr. Wicker claims that on August 21, 2015, "[he] sent a follow

up letter to Seterus and its attorneys," in which "Plaintiff tendered Seterus $67,909.30" in order

to "bring the Note current and reimburse Seterus for the past real estate taxes."    *See supra* 6 and

9.    But his own briefing contradicts the possibility that he paid off or brought the Note "current"

and was no longer in breach of the contract when he references several emails to Seterus's

attorneys offering to make three payments of "$32,000 on the 20th of September, 20th October,

and 20th of November."  *See supra* 9.    Therefore, Mr. Wicker breached a valid contract to

Seterus's detriment.

### b.  Seterus Did More than It Was Contractually Bound to Do in The Deed of Trust, Thus It Fully Performed Under The Contract.

This leaves the second element of Seterus's breach of contract counterclaim:

Seterus performed, tendered performance, or was excused from performing.    Mr. Wicker

attempts to highlight a factual dispute, though it does not rise above the metaphysical level nor

show a genuine dispute of material fact.    The crux of Mr. Wicker's argument in his Response is

that Seterus violated Paragraph 19 of the Deed of Trust by failing to provide him with the

amount remaining on the loan after payment of the reinstatement figure.    Resp. at 2, ECF No.

29.    Therefore, Mr. Wicker claims that Seterus violated his right to reinstate.  *Id*. at 4.

The Texas Property Code § 51.002(b) requires that notice of a foreclosure sale

must be given at least twenty-one (21) days before the date of sale by posting the written notice

at the courthouse door, filing it in the office of the county clerk, and serving written notice by

certified mail on each debtor who is obligated to pay the debt.    Tex. Prop. Code § 51.002(b)(1–

3).    Texas common law requires that the creditor also provide the debtor with a notice of intent

to accelerate the debt. *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982). A debtor in default on a Note must be served with written notice of the default and an opportunity to cure by certified mail at least twenty (20) days before notice of sale can be given. Tex. Prop. Code § 51.002(d). Service of both notices must be by certified mail at the debtor's last known address. Tex. Prop. Code § 51.002(e).

In *Verdin v. Fannie Mae*, the borrower asserted that the lender breached the deed of trust by failing to calculate the reinstatement amount. No. 4:10-CV-590, 2012 U.S. Dist. LEXIS 185073, at *20 (E.D. Tex. 2012). The Court determined that the notice of default, notice of acceleration, and notice of sale complied with the contractual obligation to notify the borrower of his right to reinstate. *Id.* at *21. Furthermore, while lenders are required to notify the borrower of his right to reinstate, they are not required to calculate the reinstatement figure for him. *Bejjani v. Wilmington Tr. Co.*, No. H-10-2727, 2011 U.S. Dist. LEXIS 93580, at *11 (S.D. Tex. 2011) (explaining "[w]hile the defendants accommodated the plaintiff's request for a reinstatement quote, they were under no contractual obligation to do so").

Here, Mr. Wicker was served a Notice of Default on October 16, 2013 showing that he was in default and that he owed $3,568.28 to cure that default. Mot., ECF No. 28–1, Ex. A–5 at 39. On August 12, 2016, almost three years later, Mr. Wicker was served a Notice of Acceleration and a Notice of Foreclosure Sale. Mot., ECF No. 28–1, Ex. A–6 at 48–55. The Acceleration informed him that the Loan had accelerated to the full amount and gave a number for him to call to get the current accelerated amount. *Id.* In accordance with Texas Property Code § 51.002(b), Seterus's notice of the foreclosure sale was given far in advance of 21 days before the date of foreclosure. *See supra* 9. Both notices were sent by certified mail to Mr. Wicker's last known address at the Calle Bonita Property. *Id.*

Like the plaintiff in *Verdin v. Fannie Mae*, Mr. Wicker argues that Seterus breached the Deed of Trust and his right to reinstate by failing to calculate the reinstatement amount and remaining balance. This Court agrees with the United States District Court for the Eastern District of Texas that the Notice of Default, Notice of Acceleration, and Notice of Foreclosure Sale complied with Seterus's contractual obligation to notify Mr. Wicker of his right to reinstate. Furthermore, while Seterus was required to notify him of his right to reinstate, it was not required to calculate the reinstatement figure for him nor the amount remaining on the loan after payment of the reinstatement figure. Seterus did more than it was contractually-bound to do when it furnished Mr. Wicker with the reinstatement amount of $3,568.28 by November 25, 2013 to become current on the loan. Mot. at 15, ECF No. 28, Ex. A–5. And Mr. Wicker himself references a "cure" amount in two of his filings that Seterus sent him (though Mr. Wicker complains that Seterus "refuse[d] to tell [him] what the remaining principal balance of the Note [would] be or what the monthly payment [would] be."). *Supra* 8. But Seterus was not required to calculate either amount because the three notices fulfilled its contractual obligation of performance, satisfying the second element of its breach of contract counterclaim as a matter of law. Thus, all four elements of its counterclaim are proven because there is no genuine dispute of material fact.

Pursuant to the Deed of Trust, Seterus may foreclose on the Calle Bonita Property because there was a contract breach or default in the payment obligations on the Note. Mot., ECF 28–1, Ex. A–2, ¶22. Thus, Seterus is entitled to a judgment allowing it to proceed with foreclosure in accordance with the Deed of Trust and Texas Property Code section 51.002. *See id.*; Tex. Prop. Code § 51.002.

Defendant is also entitled to summary judgment *in rem* against Midfirst Bank and the IRS because their respective liens on the Calle Bonita Property are junior, subordinate and inferior to Fannie Mae's interest. The recorded security instruments for both MidFirst Bank and the IRS were recorded in the real property records of El Paso County, Texas after Fannie Mae's security instrument was recorded. *See* Mot., ECF 28–1, Exs. A–2, C, and D. Mr. Wicker has failed to file a responsive pleading to Seterus's Motion for Summary Judgment *in rem* against these third-party defendants', so the mortgage liens shall be held as junior.

### i. Seterus Is Also Entitled to Recover Its Reasonable Attorney's Fees.

Seterus is also entitled to recover its reasonable attorney's fees incurred in prosecuting its claim for foreclosure because the Note authorizes it and this is not considered damages under Texas law. Mot., ECF 28–1, Ex. A–1 at 8, ¶6(E); *Richardson*, 740 F.3d at 1037–38.

Because federal jurisdiction is premised on diversity, we apply the substantive law of Texas. *Richardson*, 740 F.3d at 1037 (citing *Erie*, 304 U.S. 64 (1938)). Under Texas law, attorney's fees are recoverable as a cost of collection only if authorized by statute or contract. *Id.* (citing *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013). Seterus's claim for attorney's fees arises under the Deed of Trust, so the Court considers whether the attorney's fees claimed under this agreement are damages under Texas law.

Texas courts "have long distinguished attorney's fees from damages." *Id.* (citing *In re Nalle Plastics*, 406 S.W.3d at 172. To differentiate the two, Texas courts draw a distinction between "compensation owed for an underlying harm and fees that may be awarded for counsel's services." *Id.* at 1038 (citing *In re Nalle Plastics*, 406 S.W.3d at 173. Thus, attorney's fees for the prosecution or defense of a claim are not damages under Texas law. *Id.*

Texas courts also recognize, however, that in some cases attorney's fees are compensation for an underlying harm and therefore recoverable as damages. *Id.* For example, attorney's fees are considered damages if the fees are incurred in litigation with a third party, or if the fees are unpaid legal bills sought in a breach of contract action against a client, or if the fees are expended before litigation to obtain title from a third party to whom defendants had wrongfully transferred title. *Id.* In these cases, the legal fees constitute "an independent ground of recovery," *Heliflight, Inc. v. Bell/Agusta Aerospace Co. LLC*, No. 4:06-CV-425-A, 2007 U.S. Dist. LEXIS 91694, at *2 (N.D. Tex. Dec. 12, 2007) (quoting *Crumpton v. Stevens*, 936 S.W.2d 473, 476 (Tex.App.—Fort Worth 1996)), and are therefore distinguishable from the collateral legal costs associated with collecting a debt or prosecuting or defending against a pending lawsuit. *Richardson*, 740 F.3d at 1038. The language of the contract and the nature of the claim are the dispositive factors concerning whether the fees are an element of damages or collateral litigation costs. *Id.* at 1039.

Here, the Note provided for attorney's fees to compensate Seterus for the prosecution or defense of a claim. The agreement stated, in pertinent part:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Mot., ECF 28–1, Ex. A–1 at 8, ¶6(E). Thus, attorney's fees sought under this provision are expressly distinguished from the damages that Seterus incurs whenever the lender's substantive interest in Mr. Wicker's property is harmed by the borrower's failure to perform. The fees are not an "independent ground of recovery." They are the costs of collection or costs incurred to protect the lender's interest in the mortgaged property and its rights under the security agreement. Thus, Seterus is entitled to reasonable attorney's fees as a matter of law.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant/Counter-Plaintiff and Third-Party Plaintiff Seterus, Inc.'s "Motion for Final Summary Judgment and Incorporated Brief," filed on January 31, 2018, is **GRANTED.**

**IT IS FURTHER ORDERED** that all of Plaintiff/Counter-Defendant Thomas George Wicker, Jr.'s claims against Defendant/Counter-Plaintiff and Third-Party Plaintiff Seterus, Inc. are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant/Counter-Plaintiff and Third-Party Plaintiff Seterus may foreclose on the Calle Bonita Property.

**IT IS FINALLY ORDERED** that Defendant/Counter-Plaintiff and Third-Party Plaintiff Seterus may recover reasonable attorney's fees from Plaintiff/Counter-Defendant Thomas George Wicker, Jr.

**SIGNED** this **4th** day of **October 2018**.

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**